JAMES ORMISTON, Respondent, *v.* HORATIO G. OLCOTT, Executor, etc., Appellant.

*It seems* that, as a general rule, investments by executors or testamentary trustees of the funds in their hands, which take those funds beyond the jurisdiction of the court, will not be sustained, and the trustee who so invests does so at the peril of being held responsible for the safety of the investments.

This rule, however, is not so rigid as to admit of no possible exceptions, although the case must be very rare and the circumstances very unusual and peculiar to make it an exception.

The rule relates only to voluntary investments by the trustee, and does not govern a case where, by act of the testator, a foreign investment has been made, or where, without the fault of the trustee, the assets have been transmuted into a debt which can only be secured and saved by taking a foreign security.

Where, therefore, the assets of an estate had all passed into the possession of one of two executors and trustees, and, upon his death, the surviving executor found that the deceased had mingled the assets with his own, and had partly converted them to his own use and partly lost them by unsafe investments, and, as the best possible arrangement to secure the fund, the survivor took from the estate of the deceased a bond secured by mortgage on real estate in Ohio, which was guaranteed by the widow who was sole legatee and at that time solvent, and also took further collaterals for greater safety, the securities being at the time perfectly good, *held,* that it was the right and the duty of the survivor to accept the securities; and that he could not be made personally liable for so doing.

The rule that each of several co-executors is only liable for his own acts, and cannot be made responsible for the negligence or waste of another, unless he in some manner aided or concurred therein, applies as well where the executors are also trustees.

Also, *held,* that while it was the duty of the surviving executor to foreclose the mortgage in case of non-payment, he was entitled to exercise the reasonable discretion of an ordinarily prudent man as to the time and occasion.

*Ormiston* v. *Olcott* (22 Hun, 270), reversed.

(Argued February 7, 1881; decided March 1, 1881.)

APPEAL from order of the General Term of the Supreme Court, in the third judicial department, made September 24, 1880, reversing an order of the surrogate of the county of Otsego, which denied the petition of the plaintiff that defend-

ant be held personally liable for unpaid interest on securities taken by him as executor and trustee. (Reported below, 22 Hun, 270.)

The facts as conceded and found are substantially as follows:

Robert Ormiston, late of the town of Springfield, in the county of Otsego, died, leaving a last will and testament, which was admitted to probate by and before the surrogate of said county of Otsego, wherein defendant, Horatio J. Olcott, Oliver A. Morse and William M. Oliver were named as executors thereof and trustees of the estate, which was given to them in trust, to pay the rents, issues and profits to James Ormiston, the petitioner, and Agnes Ormiston, his wife, during their lives and the life of the survivor of them, and, upon their deaths, to pay the principal to the grandchildren of the testator. Letters testamentary were issued to said persons, and they took upon themselves the execution of the trust on or about the 4th day of December, 1842. William M. Oliver died on or about the year 1863. Oliver A. Morse died on or about the 19th of April, 1870, leaving said Olcott the only survivor of said trustees. On or about the 23d day of February, 1876, an accounting was had by said Olcott before the surrogate as such executor and trustee, and such proceedings were had that there was found in his hands $11,071.09. Olcott did not pay the interest or income to the *cestui que trust* for the year ending the 1st day of April, 1879, except the sum of $200. Agnes Ormiston, wife of the petitioner, died about November 7, 1876, and the petitioner is entitled to the whole of the income. Oliver A. Morse during his life-time had and received all the assets and proceeds of the estate, and had the entire charge of the same. After the death of Morse, in April, 1870, Olcott made an examination of the matters of said trust in the hands of Morse, and found that much of the assets had been invested and lost or converted by said Morse and mingled with his own funds. He thereupon, for the purpose of restoring said fund, and, as he swears in his answer, and as the surrogate found, in good faith and "in the full belief that it was the best possible arrange-

ment to secure the fund," took from the executors of Morse an assignment of a bond and mortgage upon unincumbered real estate situate in the city of Toledo, in the State of Ohio, for $12,500, which mortgaged premises at that time were of a market value greatly exceeding the amount of the mortgage, as estimated by competent judges, and were considered to be first-class security for the amount of said mortgage. He also took other and additional securities as collateral, and, to further protect said trust and secure its payment, he took from Anna Morse, the widow and sole legatee of Oliver A. Morse, and who was then good and responsible, a guaranty of the payment of said mortgage at maturity. After taking said mortgage, Olcott, on notice to all parties interested, duly rendered an account to the surrogate, of the said trust fund, whereon it appeared that the same was invested in the aforesaid mortgage, secured as aforesaid. Said account was accepted by the surrogate, and was not objected to by any of the parties interested. The petitioner was present and represented by counsel at the time of such accounting.

Olcott alleged and the surrogate found that the mortgagors in said mortgage have become insolvent, and by reason thereof the said Olcott has not been able to collect the interest thereon, and that he believed it would not be good policy, or for the interest of the said fund, or the parties interested therein, to foreclose said mortgage in the present depressed state of values of real estate, and was advised that if he should do so it would result in loss. That, by reason of his not having received any income or interest from said fund, he has not been able to pay over any interest or income due April 1, 1879.

The surrogate, upon the foregoing facts, made an order or decree denying the prayer of the petitioner, and adjudging that said Olcott is not guilty of such wrong-doing as renders him personally liable for any loss which results from his inability to collect the said mortgage or the interest thereof.

The General Term reversed this order or decree of the surrogate, and ordered that the prayer of the petitioner be granted.

· *Samuel A. Bowen* for appellant. This is not a case of the in-investment of the trust moneys by the trustee. · (2 Story's Eq. Jur., §§ 1281–1283; 1 Perry on Trusts, §§ 416, 417; *Kip's Adm'rs* v. *Dunston*, 4 Johns. 23.) The fund had lost its identity as a trust fund. It could only be regarded as a claim against the Morse estate and subject to all the contingencies of other claims. (*Barney* v. *Saunders*, 16 How. [U. S.] 535; *Dunscomb* v. *Dunscomb*, 1 Johns. Ch. 508; *Shieffelin* v. *Stewart*, id. 620; *Garniss* v. *Gardner*, 1 Edw. Ch. 128; *Cogswell* v. *Cogswell*, 2 id. 231.) The measure of defendant's liability is the same as though the testator had died in 1870, leaving his property in the same shape as Morse left his estate, and by his will directing that his executor keep invested $11,000, more or less, out of his estate and pay over the interest, etc., and the executor had set aside the mortgage in question as such investment. (*Thompson* v. *Brown*, 4 Johns. Ch. 619, 629.) With a testamentary trustee the discretion is vested in the trustee by the testator, and if this discretion is exercised in good faith, and without fraud or collusion, the court cannot review or control his discretion. (2 Perry on Trusts, § 511; *Hawley* v. *James*, 5 Paige, 485.) So long as he keeps within such discretion the court has nothing to do with him. (*King* v. *Talbot*, 40 N. Y. 76, 85, 86; *Harvard College* v. *Amory*, 9 Pick. 446, 460, 461; *Lovell* v. *Minot*, 20 id. 116; *Ackerman* v. *Emott*, 4 Barb. 626, 645, 646.) The acquiescence of a *cestui que trust* in a breach of the trust by the trustee will bar a recovery therefor. (*Sherman* v. *Parish*, 53 N. Y. 483, 492; Perry on Trusts, § 467; *Brice* v. *Stokes*, 11 Ves. 319, 325, 333.)

*H. Sturges* for respondent. A trustee must ascertain what investment his co-trustee proposes to make, what security he proposes to take. (Perry on Trusts, § 417; *Clark* v. *Clark*, 8 Paige, 152; *Johnson* v. *Corbett*, 11 id. 265; *Bates* v. *Underhill*, 3 Redf. 365.) A trustee can only protect himself by making investments recognized by the law and the rules and practice of the court. (Perry on Trusts, § 453; *Stiles* v. *Bee-*

*man*, 1 Lans. 90; *Stuart* v. *Stuart*, 3 Beav. Ch. 430; Lewin on Law of Trusts [6th ed.], 290; *Ex parte Copeland*, Rice's Eq. [S. C.] 69; *Matter of Rush's Estate*, 12 Penn. 378; *King* v. *Talbott*, 50 Barb. 453–483; Hill. on Trustees, 270; *Ackerman* v. *Emmott*, 4 Barb. 626.)

FINCH, J. Our own study of this case, and the very careful researches of the counsel by whom it was argued have alike failed to discover any judicial decision, or any legislative enactment, which directly and in terms declares as the law of this State that an executor or testamentary trustee may not invest the funds in his custody, under any circumstances, in good mortgages upon real estate situate outside of the State. And yet the general drift of authority and considerations relating to the safety of trust funds seem to require that such should be regarded as the general rule, and that investments beyond the jurisdiction of the court should not be sustained unless in very rare and exceptional cases, and under very unusual and peculiar circumstances. The rule should not be made arbitrary and inflexible, and so rigid as to admit of no possible exceptions, for it is merely an outgrowth or consequence of the broader and admitted proposition that the duty of a trustee in making investments is to employ such diligence and such prudence as, in general, prudent men of discretion and intelligence in such matters employ in their own like affairs. (*King* v. *Talbot*, 40 N. Y. 76.) While, therefore, we are not disposed to say that an investment by a trustee in another State can never be consistent with the prudence and diligence required of him by the law, we still feel bound to say that such an investment, which takes the trust fund beyond our own jurisdiction, subjects it to other laws and the risk and inconvenience of distance and of foreign tribunals, will not be upheld by us as a general rule, and never unless in the presence of a clear and strong necessity, or a very pressing emergency. The cases in our courts have quite clearly recognized the rule that an executor must invest in government or real estate securities (*Ackerman* v. *Emott*, 4 Barb. 626); but apparently no occasion has arisen until the

present to determine the effect of such an investment made beyond our jurisdiction. It would often be unjust to beneficiaries to compel them to accept such investments, and tend to increase the risk of ultimate loss. The proper and prudent knowledge of values would become more difficult and uncertain; watchfulness and personal care would in the main be replaced by confidence in distant agents, and legal remedies would have to be sought under the disadvantages of distance, and before different and unfamiliar tribunals. We do not hesitate, therefore, to recognize and declare as the general rule that the trustee who invests beyond the jurisdiction does so at the peril of being held responsible for the safety of the investment. But this rule relates only to voluntary investments by the trustee, having the fund in his hands and full opportunity and freedom of choice, and does not govern a case where, by the act of the testator, a foreign investment has been made; nor a case where, without the fault of the executor, the assets have been transmuted into a debt which can only be secured and saved by taking a foreign security. The question at bottom is in every instance the prudence and diligence of the executor, and that always must be measured, and may be modified by surrounding circumstances. In the present case, the General Term have treated the Ohio mortgage taken by the executor as a voluntary investment of trust funds beyond the jurisdiction. We do not concur with that view of the facts. The assets of the estate had all passed into the possession of the executor, Morse, and the defendant had taken no part in their possession or management. Upon the death of Morse, the defendant became sole surviving executor, and, as in duty bound, sought to reclaim the remaining assets. He found none remaining as such, and a personal liability substituted by the act of Morse and not by his own. He found that his associate executor had mixed such assets with his own property, partially converted them to his personal use, and in part lost them by unsafe investments. We do not know as a fact that the estate of Morse was insolvent, nor can we be certain that it was solvent. One thing, however, is quite apparent.

The trust funds had been practically absorbed in the estate of Morse, and had been changed into a debt due from that estate. The duty which devolved upon the surviving executor and which he proceeded to perform was one, not of investment, but of collection. He stood in the presence of an emergency which required him to do, not so much what he preferred, as what he could. He swears in his answer that what he did was done in good faith and "in the full belief that it was the best possible arrangement to secure the fund from the estate of Morse." He took from that estate a bond and a mortgage on real estate in Toledo, which was assigned to him by Morse's representatives, and guaranteed by the widow who was sole legatee, and at that time solvent, and also further collaterals for greater safety. The surrogate in his decree finds these facts to be true, and they stand wholly uncontradicted. The situation, therefore, is plain. The estate of Morse could not raise and pay the ready money. The surviving executor was shut up between two alternatives. He must either present his claim, await the slow process of administration, take all the chances of the solvency of the estate, run every risk of the honesty and prudence of its administration and of possible sacrifices, and trust to the slight watch possible over affairs transacted by others, or he must accept the securities offered, at the time perfectly good, and having no fault except that in part they were beyond the jurisdiction. If the estate of Morse was solvent the guaranty of the sole legatee held its entire surplus, and if insolvent a good security for the full amount was better than a partial and uncertain dividend. We have no difficulty in concluding that it was defendant's duty to accept the securities offered, and that his omission to do so would have been imprudent and unwise. Nor do we hesitate to say that his action does not come under the rule which forbids a foreign investment. To hold that it does would establish a perilous precedent. It might hamper the collection of debts by trustees and executors due in foreign States, and drive them to refuse ample security and thereby encounter grave risk of loss. We are of opinion, therefore,

that the defendant violated no rule of prudence in taking the security objected to, and should not be made personally liable for so doing.

Two other grounds were presented on which, it is alleged, such liability can be sustained. It is admitted that up to the death of Morse, the defendant, although co-executor, took no part in the management of the trust. It is claimed that this was negligence which rendered him liable for the misconduct of Morse. It is not disputed that the rule applicable to executors, as such, is that each is liable only for his own acts, and one cannot be made responsible for the negligence or waste of another, unless he in some manner aided or concurred therein. (*Sutherland* v. *Brush*, 7 Johns. Ch. 22; *Monell* v. *Monell*, 5 id. 283; *Manahan* v. *Gibbons*, 19 Johns. 427.) It is claimed, however, that the rule is more stringent where executors are also trustees, and the case of *Bates* v. *Underhill* (3 Redf. 365) is brought to our attention. The decision in that case is rested wholly on the English rule, which is not so rigorously enforced in this country. (Hill. on Trustees, 309, note 1; Story's Eq. Jur., § 1280.) The authorities in this State do not justify the distinction sought to be made. (*Banks* v. *Wilkes*, 3 Sandf. Ch. 99; *Kip* v. *Deniston*, 4 Johns. 23; *Kirby* v. *Turner*, Hopk. Ch. 330; *De Forest* v. *Fulton F. Ins. Co.*, 1 Hall, 130.) There would be neither wisdom nor justice in a rule which would practically end in making a trustee a guarantor of the diligence and good faith of his associates, and hold him responsible for acts which he did not commit and could not prevent.

It is further urged that the executor was negligent in continuing the investment, and in not collecting it from the debtors, and the decree of the surrogate at the close of the executor's accounting is said to have been disobeyed. Assuming that the executor had the right to take the mortgage, he certainly could not have collected it until it was due. It does not appear when that period arrived. It does appear, however, that in December, 1875, the executor rendered an account before the surrogate in which the investment in question was

plainly set forth and described, and to which neither the surrogate nor the plaintiff made any objection. The decree which directed the executor to "retain" and invest the fund merely followed the direction of the will. It is probable that the mortgage has become due, and at all events there is interest unpaid. The executor explains that he has not foreclosed on account of the depressed values of real estate. His duty is to foreclose, but he must be allowed the reasonable discretion of an ordinarily prudent man in the choice of a time and occasion. We cannot say that he has been so negligent in this respect, with the little knowledge furnished us as to the facts, as to have become liable for the amount of the trust fund. The case furnishes no accurate statements from which we can measure the length of the executor's delay since a foreclosure was possible, and gives no proofs tending to discredit the truth of his explanation or throw doubt upon the soundness of his judgment. We cannot as yet know that an ultimate loss will, in fact, result, and would not be justified in assuming it to be certain, and, on the present state of facts, charging the executor with the whole fund. The duty of an executor is difficult and delicate, and somewhat perilous even under favorable circumstances. And while no rule of proper responsibility should be relaxed, yet where he acts honestly and in good faith, and with reasonable prudence and discretion, he should not be held liable for unfortunate results which he could not be expected to foresee and was powerless to prevent.

The order of the General Term should be reversed and that of the surrogate affirmed with costs.

All concur, except FOLGER, Ch. J., dissenting; and RAPALLO, J., absent; ANDREWS, J., concurring in result.

Ordered accordingly.