In the Matter of the Petition of NATHANIEL R. DENTON et al.,
Appellants, *v.* GEORGE W. SANFORD et al., Respondents.

By the will of D. certain trusts were created to the amount of $4,500, of
which the executors of the will were the trustees.   D. held a mortgage
upon real estate in New Jersey, which previous to his death, was fore-
closed, and on foreclosure sale he bid off the premises for $11,000, the
amount of prior incumbrances and the cost; but before the sale was con-
summated D. died.  The executors were called upon to complete the sale
and pay the purchase-price, which they did.   After holding the real
estate for about three years, making diligent efforts to sell, they effected
a sale for $6,000, receiving two mortgages for the purchase-money, one
of $4,500, on the premises sold, which was assigned to defendants as
trustees, and held by them as an investment of the trust fund.   Subse-
quently this mortgage was foreclosed, and on sale about $2,300 was
realized to apply on the mortgage, which sum the trustees accounted for.
In proceedings before the surrogate, to charge the trustees individually
with the deficiency in the trust fund, *held*, that, in the absence of any
evidence impeaching their good faith, they were not liable; that as
executors they were bound to perform their testator's contract of
purchase, and were not required to wait until it was enforced against
them by legal proceedings.

Also *held*, it was immaterial that the executors paid the money to complete
the purchase out of the funds of the estate before they had qualified;
that thereafter they could ratify what they had previously done.

While, as a general rule, trustees residing in, and deriving authority from,
a will executed and admitted to probate in this State may not invest
trust funds in mortgages upon real estate out of the State, the rule does
not apply in a case like this.

After the sale of the land defendants rendered a final account as executors.
The petitioners were made parties to the proceedings.   The mortgage
was credited to the executors, and the surrogate's decree, settling the
accounts, recited, in substance, that they held the mortgage for the pur-
poses of the trust, directed payment to the *cestui que trust* of certain
sums as interest, and adjudged that, upon complying with the decree, the
executors should be discharged.   *Held*, that the petitioners were
estopped by the decree, which furnished absolute protection to the
executors.

(Argued November 30, 1886; decided December 14, 1886.)

APPEAL from judgment of the General Term of the Supreme
Court, in the third judicial department, entered upon an order
made February 8, 1886, which affirmed a decree of the surro-

gate of the county of Orange, dismissing the petition of the petitioners herein. (*Mem.* of decision below, 39 Hun, 487.)

The nature of the petition and the material facts are stated in the opinion.

*Benjamin Low* for appellants. The residuary clause of the will carries with it only the estate that remains after payment of the debts and the legacies directed by the will. (*King* v. *Strong*, 9 Paige, 94; *Banks* v. *Phelan*, 4 Barb. 80; *Pirnie* v. *Purdy*, 19 id. 60.) The same diligence is required of the executors that a man of ordinary prudence would exercise. (*Case* v. *Abeel*, 1 Paige, 393; *Killett* v. *Rathbun*, 4 id. 102; *Hart* v. *TenEyck*, 2 Johns. Ch. 76; *Thompson* v. *Brown*, 4 id. 619; *Lansing* v. *Lansing*, 45 Barb. 182; *King* v. *Talbot*, 40 N. Y. 76.)

*F. V. Sanford* for respondents. The accountings of May 11, 1877, and of June 10, 1878, having been made upon personal service of citations upon all the parties in interest, and no motion having been made to vacate or set aside said decrees, or either of them, they are binding and conclusive upon all the parties. (*In re Tilden*, 98 N. Y. 434; *Hyland* v. *Baxter*, id. 610; *In re Hawley*, 100 id. 206.) These decrees have never been appealed from, and are as binding upon all these petitioners as to all the transactions of the executors to the time of entry as would be the judgment of any other court. (*In re Hood*, 80 N. Y. 512, 515; *Wright, etc.*, v. *Trustees, etc.*, Hoff. 201, 214; *Rose* v. *Lewis*, 3 Lans. 320; *Mills* v. *Hoffman*, 92 N. Y. 181, 189.) If, however, the final decree was not binding and conclusive in the matter, still the acts of the petitioners in accepting the interest, with knowledge that the investment had been made, and that the interest was paid therefrom, without any dissent, was a complete ratification of the action of the executors in retaining the mortgage. (*Mills* v. *Hoffman*, 92 N. Y. 181; Perry on Trusts, §§ 467, 849; *Sherman* v. *Parish*, 53 N. Y. 483; *Doud* v. *Holmes*, 63 id. 635; *Sheldon, etc., Co.* v. *Eickemyer, etc., Co.*, 80 id. 607; *Andrews* v. *Ætna*

*Life Ins. Co.*, 92 id. 596; *Kent* v. *Quicksilver Mining Co.*, 78 id. 159; *Boerum* v. *Schenck*, 41 id. 182.) While trustees are thus held to great strictness in their dealings with the interest of their beneficiaries, the court will regard them leniently when it appears that they have acted in good faith, and if no improper motive can be attributed to them; the courts have even excused an apparent breach of trust, unless the negligence is very gross. (*Lansing* v. *Lansing*, 45 Barb. 182; 1 Abb. Pr. [N. S.] 288; *Higgins* v. *Whiteslow*, 20 Barb. 141.) This investment was not a voluntary investment of these respondents. This case is one where by act of the testator a foreign investment had already been made by him which could only be secured and saved to the estate by taking a foreign security. (*Ormiston* v. *Olcott*, 84 N. Y. 339; *Denton* v. *Sanford*, 39 Hun, 487.) The effect of the action of the petitioners is to work an estoppel as against them whatever may have been their intention or motive in the matter. (*Blair* v. *Waite*, 69 N. Y. 113; *Veile* v. *Judson*, 82 id. 32; *Fuvill* v. *Roberts*, 50 id. 222; *Gallagher* v. *Nichols*, 60 id. 438; *Voorhis* v. *Olmstead*, 66 id. 113; *Manufacturers & Traders' Bk.* v. *Hazard*, 40 id. 226.) The executors having done all in reference to this property solely in a representative capacity, under the advice of counsel both as to the condition of the title, and the loss having occurred without bad faith or even imputation of bad faith on the part of the trustees, they cannot be held liable for it. (*Thompson* v. *Brown*, 4 Johns. Ch. 619, 629; *Brown* v. *Campbell*, Hopk. Ch. 265; *Pierson* v. *Thompson* 1 Edw. Ch. 212; *Crabb* v. *Schenck*, 92 N. Y. 56, 68.)

EARL, J. Samuel Denton died April 7, 1878, leaving a will in which these respondents were appointed executors, and leaving personal estate inventoried at about $48,000, but actually worth much less. He gave legacies to various persons, and created trusts, and made these respondents trustees of $3,000, and ordered the interest to be paid annually to Nathaniel R. Denton and at his death the principal sum to be divided

between his children and trustees, of $1,000, and ordered the interest to be paid annually to John Baird, and at his death the principal sum to be divided between his children; and he also made them trustees of $500, for the benefit of George W. Denton.

Previous to his death he held a mortgage upon premises situated in the State of New Jersey, and he there commenced a foreclosure of that mortgage in the Court of Chancery and obtained a judgment of foreclosure directing a sale of the mortgaged premises. In pursuance of that judgment the premises were sold and bid off for the testator by his attorney for the sum of about $11,000, which was the amount of the prior liens and incumbrances upon the premises, together with the costs of the foreclosure; but before the sale was consummated and the deed given he died. After his death the executors were called upon to complete the sale and pay the purchase-price, and on the 8th day of June, 1874, they took the deed in their individual names, but for the benefit of the estate. All this they did, acting in good faith, under the advice of counsel and in the exercise of reasonable prudence and care. They held this real estate until April 2, 1877, in the meantime renting it and making diligent efforts to sell it; and having failed in such efforts, on that day they conveyed it to John Burt for $6,000, and on the same day he conveyed it to Mary F. Mapes, and she executed to Burt two mortgages, a first mortgage to secure $4,500 and a second one to secure $1,500 of the purchase-money. The mortgage for $4,500 was assigned to the executors as trustees for the security and as an investment of the funds belonging to the three trusts above mentioned. Subsequently to that date the executors rendered a final account of their proceedings, after citations personally served upon all these petitioners. Upon that accounting it appeared that they had paid all the legacies except those invested in and represented by the mortgage for $4,500 and another trust of $1,500, and the surrogate made a decree in which he adjudged that the account of the executors should be finally settled and allowed as filed and adjusted, and the decree recited further as follows:

" And it further appearing that said executors have the sum of $6,000 invested on bond and mortgage for the following persons : The sum of $3,000 for the said Nathaniel A. Denton ; the sum of $1,000 for John Baird ; the sum of $500 for George W. Denton, and the sum of $1,500 for the said Emily Conklin ; and it further appearing that said legatees Nathaniel R. Denton, John Baird and George W. Denton claim interest on their respective legacies from the date of the death of said Samuel Denton, which occurred on the 7th day of April, 1874, and after hearing the respective counsel in this matter, and due deliberation being had thereon, it is ordered, adjudged and decreed that said executors pay to Nathaniel R. Denton the interest on his said legacy of $3,000 from April 7, 1874, being the sum of $210, and that they pay to John Baird the interest on his said legacy of $1,000 for the same period of time, being the sum of $70, and that they pay to the general guardian of said George W. Denton the interest on his said legacy of $500 for the like period of time, being the sum of $35, said interest amounting in all to the sum of $315, and for which amount said executors are credited in the foregoing statement ; " and it was further decreed that the executors, upon complying with the terms of the decree, should be discharged. Thereafter interest on the two mortgages was regularly paid down to the 1st day of April, 1882, and paid over to the persons entitled thereto under the various trusts and the decree of the surrogate.    Subsequently it turned out that, unknown to the executors, and probably also to the testator, there was a defect in the title to the real estate, and in consequence thereof the mortgagor ceased to pay the interest upon the mortgage for $4,500, and it was foreclosed by the executors, and there was realized upon such foreclosure, after deducting the costs and expenses of the same, nearly $2,300, for which they have accounted.    After that time no interest was paid to these petitioners, and they filed this petition in the Surrogate's Court calling the trustees to account for the money invested in the New Jersey real estate, and asking that they be made personally liable for any deficiency in the trust funds.

There is nothing in the proof or the findings of the surrogate impeaching the perfect good faith of the executors in all their transactions. The testator having bid off the real estate in New Jersey, and, as we must assume, having become personally obligated to pay his bid, and to perform his contract of purchase, these executors, representing his estate, were bound to perform that contract. They were not obliged to wait until it was enforced against them by legal proceedings, but they had the right voluntarily to discharge the obligation which their testator had incurred.

It matters not that they paid the money and took the deed before they had qualified as executors. After they had qualified they could ratify what they had previously done, and thus make that legal which was before illegal. They cannot be charged with a *devastavit* in taking money of the estate before they had received their letters and, acting in good faith and with what then appeared to be reasonable prudence, using it to discharge an obligation apparently valid resting upon their testator.

They thus found themselves with this land belonging to the estate situated in the State of New Jersey. They sold it for the best price they could obtain, which was, without their fault, much less than cost. Having paid all the legacies which were due and payable, and which they were bound to discharge in cash, they took the two mortgages for $6,000 to represent the trust funds which they held. The mortgage for $4,500, in which these petitioners were interested, was apparently adequate security.

While it is a general rule that an executor or trustee residing in this State, and deriving his authority from a will executed and admitted to probate here, cannot invest trust funds in mortgages upon real estate situated out of the State, yet as stated in *Ormiston* v. *Olcott* (84 N. Y. 339) that rule is not universal, and has some exceptions. There FINCH, J., said: " The rule should not be made arbitrary and inflexible, and so rigid as to admit of no possible exceptions, for it is merely an outgrowth or consequence of the broader and admitted propo-

sition that the duty of a trustee in making investments is to employ such diligence and such prudence as, in general, prudent men of discretion and intelligence in such matters employ in their own like affairs. While, therefore, we are not disposed to say that an investment by a trustee in another State can never be consistent with the prudence and diligence required of him by the law, we still feel bound to say that such an investment, which takes the trust fund beyond our own jurisdiction, subjects it to other laws, and the risk and inconvenience of distance and of foreign tribunals, will not be upheld by us as a general rule, and never unless in the presence of a clear and strong necessity, or a very pressing emergency."

We think this investment comes within the exceptions to the rule. Here was land belonging to the estate; and the trustees sold it. Not being able to obtain cash, they took a first mortgage which was supposed to be ample security to represent the trusts. They did not take available funds, and carry them out of the State, and there invest them in real estate; but they invested the trust funds in a mortgage which regularly and legitimately came to them upon land belonging to the estate which they sold, and we cannot say that it was a breach of duty on their part so to invest them; and if there were nothing more in the case, the loss upon the investment, however disastrous to these petitioners, could not be cast upon the trustees.

But we think also that the decree of the surrogate upon the final accounting of the executors furnishes absolute protection to them. These petitioners were parties to that accounting, and it does not appear that any objection was there made to the payment of $11,000 in discharge of the testator's bid, or to the mortgage of $4,500 taken in part to secure the two sums of $3,000 and $1,000 in which the petitioners were interested. Upon that accounting the executors were charged with the whole amount of the inventory, and with the increase thereof, and they were credited by loss on the inventory, by expenses and legacies paid, and by $6,000 invested in these two mortgages; and it appears in the decree that the $6,000 included the trust funds in which these petitioners are interested. That

decree, which has never been impeached or reversed, finally settled and allowed the accounts thus presented. So long as it remains in force, none of the parties thereto can object that the $11,000 was not properly paid for the real estate in New Jersey; that the two mortgages amounting to $6,000 were not properly taken, or that the mortgage for $4,500 did not represent the two trust funds in which the petitioners claim an interest. (Code, § 2742; *In re Tilden,* 98 N. Y. 434; *In re Hawley,* 100 id. 206.)

We are, therefore, of opinion upon both grounds that the decision of the surrogate was right, and that the judgment of the General Term should be affirmed, with costs.

All concur, except FINCH, J. not voting.

Judgment affirmed.