In the Matter of the Accounting and Settlement of the Accounts of BOYD McDOWELL and Others, as Executors, etc., of ROBERT M. McDOWELL, Deceased.

BOYD McDOWELL and Others, as Executors, Appellants, Respondents; JOHN G. McDOWELL and Others, Respondents, Appellants.

Third Department, May 2, 1917.

**Executors and administrators — trusts — presumption that duties of executors and trustees named in will are coexistent — presumption that investments were made in their capacity as trustees — defense of investments on accounting.**

Where there is no period of time or event suggested in a will when the duties of executors named therein are to cease and their duties as trustees to begin, it will be assumed that the testator intended that their duties should be coexistent.

Where such persons named both as trustees and executors do an act which they have not the right to do as executors, but which they may do as trustees, it will be presumed that they have acted in the latter capacity, and on an accounting they have the right to defend investments made by them by invoking the discretion given them by the will as trustees, so far as it will reasonably cover their acts.

APPEAL by Boyd McDowell and others, as executors, from an order of the Surrogate's Court of the county of Chemung, entered in the office of said Surrogate's Court on the 22d day of April, 1916, directing that a supplemental citation issue and certain remaindermen be brought into the proceeding, also from a decree of said Surrogate's Court, entered in the office thereof on the 17th day of November, 1916, settling the accounts herein, and also from a subsequent decree of said Surrogate's Court entered in the office thereof on the 2d day of January, 1917, modifying the former decree.

Appeal by John G. McDowell and others from parts of the decree herein entered in the office of the Surrogate's Court of the county of Chemung on the 2d day of January, 1917.

*Baldwin & Allison* [*E. J. Baldwin* and *Thomas M. Losie* of counsel], for the executors, appellants and respondents.

*John F. Murtaugh* [*Richard H. Thurston* of counsel]; *Stanchfield, Lovell, Falck & Sayles,* and *Turner & Henry,* for other appellants and respondents.

KELLOGG, P. J.:

The decrees appealed from, in effect, charge the executors with $56,500 on account of reinvestments made in bonds and securities, which have defaulted in paying the interest and with four and one-half per cent interest on such investments during the default. The surrogate has, in substance, determined that the will separated the office of executor and trustee and that the work of the executors must be finished before their duties as trustees began; that the executors remained such until they accounted, and as such had no right to sell securities and reinvest the proceeds; that they had not acted and could not act as trustees and, therefore, that the discretionary power as to investments given to the trustees · by the will was unavailing.

The will was probated July 8, 1909, and thereupon letters testamentary issued. The first item of the will directed the executors to pay the debts and funeral expenses; the second item bequeathed certain legacies aggregating $13,000; the third item gave all the rest of the estate, real and personal, to Casper G. Decker, Jervis Langdon and Boyd McDowell, in trust, to hold, manage, invest and reinvest " as they shall deem wise and judicious and for the best interests of the beneficiaries hereinafter named, said trustees being to that end hereby empowered to sell, grant, exchange, lease, hold or otherwise dispose of the same or any part thereof, subject to the limitations and provisions hereinafter contained (the avails or property into which the same may in any wise be converted being subject to all the conditions hereof applicable to the original property or fund), and to lease, loan and invest the same as they shall deem discrete, and out of the rents, interests, income and profits thereof " to pay the necessary expenses of the trust, the income of $10,000 to his sister-in-law during life; the remainder of the income to his son and the son's wife during the lifetime of the son, such sums to be paid in such manner and proportion for each as the trustees deem judicious and necessary. Upon the death of the son, the son's wife was given $8,000, the remainder to go to the son's legitimate descendants, if any; if not, to certain other persons named. The last item appointed said Decker, Langdon and McDowell executors.

On the petition of the life beneficiaries the executors were required to account, and they rendered an account as executors and as testamentary trustees. The beneficiaries filed objections to certain items of the account, and the general objection that the account was erroneous in uniting the account of the executors and trustees, as the executors had never completed their executorial duties nor been discharged, and had no right or authority to assume the duties, or invest and disburse the fund as trustees, and that the accounts filed should relate to the accounts of the executors only. The evidence called out by the life tenants and by the executors related generally to the administration of the estate from the date of the probate until the accounting, including the income on all securities and property and the income paid the *cestui que trust.* When the examination of the executors was terminated, the petitioners asked that a supplemental citation issue bringing in the remaindermen, which request was granted and the remaindermen were brought in. The inventory showed a personal estate of $148,980.49 and real estate of $15,000. Of the personal estate, upwards of $10,000 was cash in bank, and upwards of $12,000 was insurance policies upon the testator's life, which were promptly paid. The total debts amounted to $90.37, so that the money in the bank and the money realized from the insurance policies were more than sufficient to pay the debts, the funeral expenses and the specific legacies, together with the commissions of the executors. The remainder of the personal estate, as inventoried, was invested in bonds and like securities, of which about $32,737 represented New York State investments; the balance were bonds and securities of railroad, industrial and other companies outside of the State.

The executors promptly opened a bank account in the name of " Estate of R. M. McDowell," and checks were drawn upon printed blanks in which " Estate of R. M. McDowell " was the drawer, and Boyd McDowell signed his name in a blank left between that name and the word " executor " and one of his associates countersigned them over the word " executor." But one account of moneys received and disbursed was kept. Immediately after qualifying they began to make payments of income to the life beneficiaries, and

Third Department, May, 1917.          [Vol. 178.

continued such payments from time to time when income was received. The debts, funeral expenses and legacies have been paid. Boyd McDowell has anticipated his commissions; the other executors have received none. Some assets of small value, a box of nuggets inventoried at fifty dollars, have not been disposed of. They have treated their duties as executors and trustees as coexistent, and have made no discrimination in their bookkeeping between assets, receipts and payments by them as executors or as trustees.

In order to give the life beneficiaries a larger income, and probably also with the intention of benefiting the remainder-men, they sold most of the securities held by the testator in his lifetime and reinvested the proceeds. The investments were made as permanent investments for the purpose of carrying out the trust provisions of the will, and among them are the securities in default.

There is no period of time or event suggested in the will when their duties as executors are to cease and their duties as trustees to begin. Evidently their duties as trustees began at once as to the real estate. It is reasonable to assume, therefore, that the testator had in mind, just as the executors have had, that the duties were coexistent. If the executors had treated the trust estate as distinct, and had kept separate accounts and claimed commissions in each capacity, it would not be unreasonable for the life beneficiaries and the residuary legatees to contest that claim. (*Matter of Ziegler,* 218 N. Y. 544, 551.) We quote from the opinion at page 551: " 'That the same person may be entitled to compensation as executor, and also as trustee, in respect to the same estate, or some part thereof, is undoubtedly true, but does not follow in every instance where trust duties are imposed upon an executor. Where, by the terms or true construction of the will, the two functions with their corresponding duties coexist, and run from the death of the testator to the final discharge; interwoven, inseparable and blended together, so that no point of time is fixed or contemplated in the testamentary intention at which one function should end and the other begin, double commissions or compensation in both capacities cannot be properly allowed.' (*Johnson* v. *Law-*

*rence*, 95 N. Y. 154, 159.) " (And see *Matter of Kellogg*, 214 N. Y. 460.)

If they had found large amounts of funds uninvested, they would have violated their duties as trustees if they had failed to invest them. If securities received from the testator were known to be doubtful, it was their duty as trustees to change such investments. An executor " holds not in his own right, but as a trustee, for the benefit (1) of the creditors of the testator, and (2) of those entitled to distribution under the will, or if not all bequeathed, under the Statute of Distributions." (*Blood* v. *Kane*, 130 N. Y. 514, 517.) In this case the exercise of the executorial functions required the payment of the debts, the funeral expenses and the specific legacies; the balance of the property was given outright to the trustees in trust. As to property specifically bequeathed, the executor has but a qualified title, the right to apply it in the discharge of the debts after exhausting the other property applicable thereto, and if he assents to the delivery of the legacy, the legatee has title, subject to be called upon, if it transpires that there is not sufficient other property to pay the debts. " The title of one who takes the entire estate under a will stands on the same footing, and is just as absolute, and he, with the assent of the executor, can recover in his own name a chose in action, or make it available by way of counterclaim. The trust estate of a sole executor, who is also the sole devisee and legatee, is solely for the benefit of the testator's creditors, and when they are paid the trust estate sinks into and is merged with the beneficial interest, and the sole devisee and legatee becomes vested with the legal title of all the testator's estate." (*Blood* v. *Kane, supra,* 517. See, also, 18 Cyc. 238.)

" It is not the law, however, that trustees may not receive any part of the trust estate, consisting of personalty, until the executor has accounted and been directed to pay it over. * * * And even with respect to the residuary estate, the trustee may enter upon his duties as such even before his accounting and discharge as executor. * * * The trustees were not bound to wait until the final accounting of the executor before investing the money belonging to the trust funds in the manner directed by the testator. Certainly'

Third Department, May, 1917.          [Vol. 178.

the investment ·of such moneys was an act of the trustees, who thereupon held the securities purchased as joint tenants." (*Matter of Kellogg, supra*, 466, 467.)

" Although executors are trustees within the larger meaning of the term, the law recognizes a distinction between an ordinary trustee and an executor.  A trustee has possession for custody, and an executor for administration with a necessary incidental power of disposal which a trustee does not have."   (11 Ruling Case Law, 21.)

" As a general rule an executor will be deemed to be a trustee whenever a non-administrative discretionary power, such as a power of sale, is given to him, or when the duties implied are active within the meaning of this term as applied to trusts.  Where an executor, after the payment of debts, legacies and expenses of administration, continues to hold the estate, he may frequently be considered as in fact holding it as a trustee so as to render him liable for mismanagement in the same manner and to the same extent as a trustee would be liable."   (11 Ruling Case Law, 22, 23.)

Here the same persons are trustees and executors, and when they do an act which they have·not the right to do as executors, but which they may do as trustees, it will be presumed that they have acted in the latter capacity.  The accounting, as conducted, has caused the executors to account for their acts as trustees, but when it comes to the reinvestments it is held they are not trustees but executors only, and thereby they are deprived of the benefit of the provision in the will which gives to the trustees a certain discretion as to the investments they shall make.  It seems clear in this case that the accounting parties have the right to defend the investments made by them by invoking the discretion which the will places with the trustees.  It is unnecessary to determine the effect which such discretion may have.  If the investments made by the executors can be sustained in whole or in part by the discretion given to them as trustees, it would be unjust to deny them that defense.

All the persons beneficially interested are before the court. The accounts filed by the executors are for their proceedings as executors and as trustees, and those accounts have been examined and passed upon, except that the surrogate has

failed to consider how far the discretion vested in the trustees as to investments protects them from liability on account of the defaulted securities. It is clear that the changes in the investments were made by the trustees as such, and that they may invoke the discretion given them by the will so far as such discretion will reasonably cover their acts. There was, therefore, manifestly a mistrial, which resulted in a great part probably from the claim of the life beneficiaries that the investments were made solely as executors and not as trustees, and the claim by the executors that having made investments as trustees, no inquiry as to such investments could be made upon an accounting by the executors. Each side stood upon untenable grounds, with a resultant mistrial. It was contended upon the argument, and apparently with force, that the executors did not produce the evidence which they could have produced to justify the purchases as acts of discretion, as they understood that that question was not before the court.

The life tenants brought into the settlement the residuary legatees and devisees. We have then before the court every person interested in this estate as beneficiary or in any fiduciary relation. Considering the manner of the trial, justice requires that this settlement be considered a settlement of the accounts as filed, and that the court determine whether the accounts as filed are just and true, and as to the defaulted securities, whether the trustees have faithfully executed the trust and used the discretion lodged in them, in a reasonable manner, or whether they have negligently, improvidently and improperly, without due care and caution, made the investments complained of. It is a sacrifice of substance to form to hold that the accounting was solely as executors and that the investments were made as executors and not as trustees.

It is said the executorial position carries with it title to the personal property to the three persons named as executors and the other provision gives to the same persons the same property. We are not controlled by the particular words or language used; we are dealing with the substance of the will, its intent, which is that the accounting parties in this estate are charged with the duties of paying the debts, the legacies,

the expenses of administration, and holding and distributing the remainder to the beneficiaries.

We conclude, from the spirit and substance of the will, the manner in which the estate has been handled, the manner in which the accounts were filed and the evidence given, all persons having any possible interest being before the court, that it was the duty of the surrogate to determine the controversy without regard to technicalities of form or procedure.

If it is discovered that any parties interested, or who may be interested in the trust estate, are not before the court, the surrogate should bring them in.

The decree and the amended decree should, therefore, be reversed and the matter remitted to the surrogate for further consideration, with the right to either party to introduce such further evidence as may be proper. The order bringing in the residuary legatees and devisees should be affirmed. The cross-appeal from a portion of the decree falls with the decree. Having determined that the decree is a result of a mistrial, neither party is more responsible for such result than the other, and no costs are imposed.

All concurred.

Decree and amended decree reversed and the matter remitted to the surrogate for further consideration, with the right to either party to introduce such further evidence as may be proper. The order bringing in the residuary legatees and devisees affirmed. Cross-appeal by the life beneficiaries dismissed, without costs. This decision is without prejudice to the right of the life beneficiaries to apply to the surrogate for payment of income whenever there is any on hand properly applicable to that purpose.