In the Matter of the Estate of SOPHIA POULSON, Deceased.

Surrogate's Court, New York County, May 7, 1935.

*John D. Van Wagoner*, for the administratrix.

*Wingate & Cullen*, for the objectants.

*Walter Byron Caughlan*, special guardian for infants and incompetent.

DELEHANTY, S. Decedent died intestate on April 6, 1931, while resident in New York county. Her distributees are twenty-five in number and are all descendants of brothers and sisters. Thirteen reside in Sweden, five in Utah, two in each of the States of California and New York, one in each of the States of Colorado and Missouri and one in Denmark. None of the distributees knew of decedent's death for some weeks after it occurred and learned of it only after her effects were taken over by the public administrator of New York county.

When the accounting administratrix learned of decedent's death she came here from Salt Lake City, Utah, where she resided and procured here letters of administration on the estate. She proceeded to collect the assets of the estate, which consisted of three savings bank accounts in this State, a fourth savings bank account in Stamford, Conn., a mortgage on real property in Connecticut and miscellaneous household furnishings and personal effects located here. All of the latter and the mortgage were converted into

cash. All of the savings accounts were collected. After paying her bond premium, the funeral bill for deceased and the debts, accountant returned to Utah and there deposited on July 7, 1931, all of the remaining estate funds in an estate account in a solvent savings bank of Salt Lake City. On February 15, 1932, the bank was closed and is being liquidated under the State Banking Law of Utah. Only $11,503.23 of the $15,757.84 on deposit to the credit of the estate at the closing of the bank has been paid by the liquidator to the accountant. There remains a balance of $4,254.61 uncollected. She reports this sum in her account and asserts its probable collectibility. She asks to have her account treated as an intermediate account and asks to have her bond reduced to the sum representing the uncollected balance of her claim against the closed bank as of the date of the decree.

Objections to the account have been filed by several distributees. Disposition was made upon the hearing of all items except a major objection which seeks to surcharge accountant with the amount remaining uncollected from the closed bank. Objectants seek to have this proceeding determined to be a final accounting so that the liability of accountant and her surety may now be fixed.

In opposition to the attempted surcharge the administratrix and her surety contend that there was no negligence in depositing the funds in a savings bank in Utah since it is conceded that the deposit was made in the name of the estate and that the bank was solvent and in good standing when the deposit was made. As a part of their contention the accountant and her surety assert that there is no prohibition in the law or in the cases against the deposit of estate funds outside the State of appointment of an administrator.

Nothing in the administration of this estate required or justified the removal of the funds of the estate from this jurisdiction. Some suggestion was made on the hearing that it was done for the convenience of the distributees resident in Utah. Only five resided there, whereas fourteen resided abroad and two in this State. As a matter of fact no question of convenience of distributees was involved since all distributions were made by counsel here. The removal of the funds merely caused delay in administration.

An administrator is representative of the jurisdiction which appoints him and has such authority only as is granted by the laws of the State of appointment. Conflict may well arise respecting a decedent's property and its administration if the property be located in more than one jurisdiction. (American Law Institute, Restatement of the Law of Conflict of Laws, chapter 11.) While an administrator may be under the necessity of leaving assets for a time in a foreign State pending their collection, it is difficult to

conceive a state of facts (other than an invasion or state of war) which would warrant a domiciliary administrator in removing assets from the State of his appointment.

Such hints as are to be gathered from the statutes oppose the removal. (Surr. Ct. Act, § 231; Pers. Prop. Law, § 21; Dec. Est. Law, § 111; Banking Law, §§ 239 and 251.) In principle the question here has been decided in a case which dealt with the liability of a trustee (*Ormiston* v. *Olcott*, 84 N. Y. 339). The language used in the cited case respecting the dangers to trust funds is peculiarly apt here. To a trustee there is committed generally some right to exercise discretion. To an administrator no comparable discretion is committed. He has the sole duty of collecting assets and paying them over as rapidly as claims of creditors can be scrutinized and the rights of distributees ascertained. For that purpose he should keep the fund within the jurisdiction which appoints him and to which he has to account. Paraphrasing the statement of the Court of Appeals in *Ormiston* v. *Olcott* (*supra*), the rule is that an administrator who takes the funds of an estate beyond our own jurisdiction and subjects them to other laws and the risk and inconvenience of distance and of foreign tribunals does so at the peril of being held responsible for the safety of the funds. This rule assures a central supervision over estate funds and makes available in the jurisdiction which appointed the administrator all the remedies necessary to a full administration of the estate and the protection of the rights of all persons in interest. The act of this administrator in taking the funds to Utah has subjected them to the very hazards outlined in *Ormiston* v. *Olcott* (*supra*). The beneficiaries of this estate should not be subjected to the danger of loss arising from such unwarranted removal of assets. The rule in *Ormiston* v. *Olcott* (*supra*) has been approved (*Denton* v. *Sanford*, 103 N. Y. 607; *Matter of Reed*, 45 App. Div. 196; *Matter of Avery*, 45 Misc. 529; *Matter of McDowell*, 97 id. 306; revd. on other point, 178 App. Div. 243; S. C., 102 Misc. 275; modfd., 184 App. Div. 646). The cases cited by accountant and her surety are not in point. In *Moore* v. *Eure* (101 N. C. 11; 7 S. E. 471) the fund was already in the foreign State when the successor administrator took it over. He had not made the deposit there. No negligence was shown on his part and he was not surcharged. In *Woodley* v. *Holley* (111 N. C. 380; 16 S. E. 419) an executor who deposited estate funds outside the State was denied reimbursement therefrom because of his act of negligence.

Notwithstanding the view expressed in any other State, the sound rule in principle seems to be that administration funds must be at all times kept within the State of administration.

Because of her violation of this salutary rule the objections relating to the balance in the Utah bank are sustained and the administratrix is surcharged with the amount thereof. Since this ruling disposes of all open questions the account will be deemed a final account and the decree here to be entered will finally settle the estate. The decree may provide that upon payment of the amount of the surcharge the administratrix will be subrogated to the estate's claims against the closed bank.

Submit, on notice, decree settling the account accordingly.