ATLANTIC & NORTH CAROLINA R. R. CO. *v.* T. M. COWLES *et al.*

The condition of a bond given by the Treasurer of a Railroad Company that he " shall faithfully discharge the duties of the office, and well and correctly behave therein," does not bind him to keep the money of the Company safely against all hazards. It only binds him to an honest, diligent and competently skillful effort to keep the money. Hence, where the Treasurer deposited the money [of the Company to his credit as such in a banking-house, which was at the time in good standing and credit, and was considered by the community a safe place of deposit for money : *It was held,* That he and his sureties were not responsible for its loss by the sudden and unexpected failure of the banking-house.

Though the officer of a Railroad Company is bound to know the by-laws of the corporation, it does not follow that the sureties to his bond are presumed to know them unless there be a reference to them in the bond. The obligation of the sureties is confined to the words of their bond, and cannot be extended beyond them.

The case of *Ellis* v. *N. C. Institution, &c.,* 68 N. C. Rep. 423, cited and approved.

This was a CIVIL ACTION brought against the defendant, Cowles, and his sureties, upon the bond which he gave upon being elected Secretary and Treasurer of the plaintiffs. At

the last Superior Court of CRAVEN county, the following case agreed was submitted to his Honor, *Clarke, J.:*

While the defendant, Cowles, was Secretary and Treasurer of the plaintiff, and during the period covered by the bond in suit, he deposited money of the plaintiff with the firm of S. T. Jones & Co., bankers in the city of Newbern, to the credit of "T. M. Cowles, Treasurer of A. & N. C. R. R. Co. On the 1st day of March, 1870, the said firm of bankers failed. The defendant, Cowles, who had previously been depositing and checking out money in his business, with the said firm from day to day, had on that day $8,725 of money belonging to the plaintiff, and in the custody of himself as such Treasurer, on deposit with said firm of S. T. Jones & Co., of which sum a part has been paid, leaving a balance still due and unpaid of $4,671.25.

It is admitted that at the time of making said deposits, and up to the 1st of March, 1870, S. T. Jones & Co. were bankers in good standing and credit, and were considered by the community as affording a safe place of deposit for money.

No instructions as to how or where he should keep the money of plaintiff were given to Cowles. The Treasurer of the Company preceding him, elected in 1868, had been accustomed to deposit the Company's funds with the same firm of bankers, and the present Treasurer, his successor elected in October, 1872, deposits in a banking institution, but in each of these two cases, without the official knowledge, consent or authority of the stockholders and Board of Directors, or either of them.

Previous to the insolvency of the Merchants' Bank of Newbern, and the Newbern Branch of the Bank of the State, the former Treasurer of the Company deposited with such banks.

It is admitted that the defendant, Cowles, executed to the plaintiff the bond sued on in the penal sum of $50,000,

with the other defendants as sureties, and that the condition of the said bond was that " if the said T. M. Cowles shall faithfully perform the duties of said office, and well and correctly behave therein," then the bond should be void. The charter and by-laws of the Company are admitted.

If the Court shall be of opinion for the plaintiff, judgment is to be entered for it for $50,000, the penalty of the bond against the defendants to be discharged upon the payment of $4,671.25 damages and cost, otherwise judgment to be entered for the defendants. His Honor being of opinion with the plaintiff, gave judgment accordingly, and defendants appealed.

*Seymour and Green*, for the defendants, contended that the defendant, Cowles, as the Treasurer of a Railroad Company, was not to be held to the strict accountability of a Government officer, but was only responsible for ordinary care, skill and diligence in performing the duties of his office, and they cited and relied on the following authorities: Southcote's case, 4 Rep. 83; 1 Smith's Lead. Cas. 286; Morse on Banks and Banking 202, and the cases cited in Note 3; *American Bank* v. *Adams*, 12 Pick. 303.

*Lehman*, for the plaintiff, argued to the contrary, and ced the following cases and authorities: *State Bank* v. *ck*, 4 Dev. 529; *United States* v. *Prescott*, 3 Howard or 15 Curtis 560; *United States* v. *Dashiel*, 4 Wallace 182; *United States* v. *Morgan*, 11 Howard 154; *United States* v. *Keeler*, 9 Wallace 83; *Barrington* v. *Bank of Washington*, 14 Serg. and Rawles 405; Morse on Banks and Banking 200 and 201; *American Bank* v. *Adams*, 12 Pick. Rep. 303; *Ellis* v. *N. C. Institution for the Deaf*, &c., 68 N. C. Rep. 420.

RODMAN, J. The condition of the bond declared on is in the following words: " Now, therefore, if the said T. M. Cowles shall faithfully discharge the duties of said office

and well and correctly behave therein, then the above obligation to be void," &c.

The defendant, Cowles, while in the service of plaintiff, received money for them and deposited it in the banking-house of S. T. Jones & Co. to his credit as "Treasurer of the Atlantic and North Carolina Railroad Company." The bank was then in good credit, and the deposit was not a dishonest or imprudent one. The bank suddenly failed on 1st March, 1870, being then indebted to Cowles on his account as Treasurer in over $8,000, all of which has been since paid to the plaintiff, except $4,671.25. The breach assigned is a failure to account for and pay this sum.

The plaintiff contends that the defendants contracted that Cowles should keep the money of the plaintiff safely, and that any loss thereof, from any cause whatever, is a breach of the contract. His contention is based upon :

1. The words of the condition ; and 2. Upon the words taken in connection with the by-laws of the Company, which define the duties of the Treasurer.

1. We do not think that the cases which have been cited (such as *United States* v. *Prescott*, 3 How 578) to establish that the bond given by an officer of the United States Government, whose duty it is to receive the money of the Government, is a security for its absolute safety and against loss by any means, have any bearing on the present case. The words of the bonds of such officers are materially different from those of the one declared on, and the decisions go greatly on considerations of public policy. We do not know of any case in which the doctrine of these cases is applied to any but a Government officer. The fact that the State is a large stockholder in the plaintiff corporation does dot invest it with any of the attributes of sovereignty. Its officers are not Government officers.

*As to the meaning and force of the words in the condition*, the words "faithfully discharge the duties," &c., stipulate

for the fidelity and honesty of the Treasurer, and either by themselves, or in connection with the words "well and correctly behave therein," also stipulate for his competence and diligence. To constitute a breach of the bond the officer must have acted either dishonestly or without competent skill and knowledge, or without due diligence. The breach alleged in this case does not fall under any of these heads.

The counsel for the plaintiff refers us to *Barrington* v. *Washington Bank*, 14 Serg. and Rawle (Pa.) 405, as an authority that words very like the present cover losses caused by innocent mistake. That was an action on a bond given by Barrington, as cashier of the defendant bank. The condition was that " John Barrington shall well and truly perform his duties as cashier to the best of his abilities." The breach alleged, so far as it is material to the question, was, that one Pentecost, being indebted to the bank by sundry notes, with sureties, to a large amount, the cashier, without the knowledge or consent of the Board of Directors, allowed him to substitute for those notes his own bond, payable in instalments, by which change of securities the bank lost. The Court held this to be a breach of the bond. DUNCAN, J., says : " If he (the cashier) transcends the *known powers of a cashier* by changing the securities of the bank without their knowledge, and loss has occurred *by the abuse of his trust*, the loss fall within the words of the condition, and the sureties are responsible for the amount of such actual loss." The Court evidently thought that an act beyond the *known* duty of a cashier was a fraudulent one, (whether for the sake of gain to himself or not) and hence not a performance of his duty to the best of his abilities. With this understanding of the decision, it seems to be right, and not liable to the criticism of Mr. Morse, (on Banks, p. 200), which are made on a different understanding of it.

The true rule for the construction of such contracts as the present is laid down in *Minor* v. *Mechanics' Bank*, 1 Pet. 46,

and in *American Bank* v. *Adams*, 12 Pick. 303, viz.: That a stipulation for the faithful discharge of duty and for well and correctly behaving in office, is a stipulation against dishonesty, and also against incompetence, ignorance and negligence, but not against inevitable accident or *vis major.*

2. *How far can the meaning of the words of the obligation be extended by a reference to the by-laws ?* Certainly an officer of a corporation is bound to perform the duties of the office as prescribed by the by-laws, and he is bound to know the by-law laws. *Ellis* v. *North Carolina Institution,* 68 N. C. Rep. 423. This duty arises from his acceptance of the office. And it does not follow that the obligation of his bond, which binds his suseties as well as himself, is for the absolute performance of the duty so prescribed, or that it is measured by the by-laws. The sureties are not bound or presumed to know them unless there be some reference to them, which makes them a part of the contract. Their obligation is confined to the words of their bond. It may embrace an absolute performance of all the duties of the office, or the sureties may have refused to become bound for anything beyond fidelity, competence and diligence.

In this case the bond stipulates that the Treasurer shall faithfully discharge the duties of his office, and to ascertain what those duties are, we must look to the by-laws, and for this purpose they are made part of the bond. We will assume one of them to be to keep the money of the Company absolutely safe against all hazards whatever. But the bond does not stipulate that the money shall be safely kept, or that the principal shall discharge his duty absolutely or successfully, but merely that he will *faithfully* discharge the duty of keeping the money safe; that is to say, that he will not fail in the discharge of it by reason of dishonesty, incompetence or want of diligence, thus excluding losses by *vis major,* and by accidents which happen, notwithstanding fidelity. Unless the word "faithfully" has the effect to

qualify the covenant, and the limit what without it would be a general and absolute covenant that the duty should be discharged at all events, into one such as we interpret this to be, then it has no meaning or effect whatever, and its insertion was idle and purposeless, which we cannot suppose. The breach alleged is not within the condition of the bond.

PER CURIAM.    Judgment below reversed, and judgment in this Court for the defendants.