STATE ex rel. COLLINS, Solicitor, &c., v. J. T. GOOCH et als..

*Guardian—Receiver.*

1. As a general rule, a receiver is responsible for his own neglect only, and is protected when he acts in entire good faith, but when a receiver is appointed to take charge of an infant's estate who has no guardian, and is directed to lend out the money and pay the income over to the ward, he will be held to the same accountability as a guardian.

2. A guardian will be held liable for any loss resulting from a loan made without taking any security, however solvent the debtor may have been when the loan was made.

3. It is the duty of a guardian in making his annual returns to set out the manner in which he has invested the ward's estate, and the nature of the securities which he holds as guardian.

4. A receiver or other trustee may keep money in a bank as a safe place of deposit, or may use the bank as a means of transmitting money to distant places, and if he uses reasonable diligence he will not be held liable if the bank fails, but this does not authorize a loan to the bank by such trustee without taking security.

5. Where a receiver was appointed to take charge of an infant's estate and invest the same, and report to the Court annually, and he deposited a portion of the money in a bank in another State to his credit as receiver, on which deposit he was paid interest by the bank, which afterwards failed; *It was held,* that the receiver was liable for the loss, as he had failed to report to the Court the manner in which he had invested the infant's estate, although he had acted in the best faith.

(*Boyett* v. *Hurst,* 1 Jones Eq., 166; *Moore* v. *Askew,* 85 N. C., 199; *Railroad Co.* v. *Cowles,* 69 N. C., 59; cited and approved).

CIVIL ACTION, heard on a case agreed, by *Shipp, Judge,* at January Term, 1887, of HALIFAX Superior Court.

Pending the action on the guardian bond of the defendant Hervey and his sureties, John T. Gregory, clerk of the Court, was appointed receiver, and funds belonging to the infants Annie N. and Maggie W. Conigland came into his hands as such. The order was made at Spring Term, 1882, in these words:

"This cause coming on to be heard, and it being made to appear to the satisfaction of the Court, that John T. Gregory is a suitable and responsible person to appoint as receiver of the estates of Annie N. Conigland and Maggie W. Conigland; now, on motion of the relator of the plaintiff, and of the attorneys for the infants: It is ordered and adjudged by the Court, that the said John T. Gregory be, and he is hereby appointed receiver of the estates of the said Annie N. Conigland and Maggie W. Conigland, infants, with all the powers conferred by law upon such receiver; that no bond be required of him; and that he be permitted to expend the income of the said infants for their maintenance and education during the next twelve months, and such other sums not exceeding one hundred dollars, for services rendered, and to be rendered said infants by their attorneys; and that he make annual returns to this Court, to be passed upon and audited in this cause by the Judge presiding.

Among the moneys collected by the receiver, was the sum of $2,616.16 paid by the administrator of the deceased father of the infants, whereof a portion was deposited by him in a Bank in Norfolk, and a certificate taken in the following form:

"THE EXCHANGE NATIONAL BANK,
NORFOLK, VA., October 19th, 1882.

"John T. Gregory has deposited in this Bank twenty-two hundred and eighty-five dollars and nine cents, payable to the order of J. T. Gregory, receiver of Annie N. and Mag-

gie W. Conigland, on the return of this certificate properly endorsed.

" The holder is entitled to interest from date, at the rate of six per centum per annum, if it remains three months or longer, but this Bank reserves the right, upon giving ten days' notice, to reduce the rate of interest on the 1st day of January and 1st day of July of each year.

" Such notice to be served personally, or through the post office, directed to the address named on the books of this Bank.

" No. 1051.          JOHN W. WHITEHEAD, *President.*"

The Bank failed in April, 1885, at which time it was indebted on the certificate of deposit $2,102.29, with interest from the 19th day of September, 1884, of which $1,185.16, with interest from November 1st 1884, was for the benefit of the said Maggie W. Conigland. The receiver had theretofore paid over to the said Annie N. Conigland, who became of age ____ day of _____, 188__, her part of the fund, her interest therein then belonging to him.

At the time of making said deposit, and up to the failure of the Bank, the receiver believed it to be a perfectly safe and convenient investment, at a good rate of interest; the Bank, up to its failure, was considered solvent, had good credit, and possessed the full confidence of the business community.

The receiver kept his own private account current with the Bank, but had none of his funds deposited there or in any other bank, on certificate, except, as he had paid over to said Annie N. her share of the deposit money, it had become his own.

The receiver filed annual accounts of the funds up to and including Fall Term, 1884, which were approved by the Court, and ordered to be put on the record, but in none did

he report what investments he had made, or what securities he had taken therefor.

It is unnecessary to go into further details, since in the general account of the trust funds, the only controversy is in reference to the personal accountability of the receiver for the loss sustained by reason of the insolvency of the bank.

Upon the facts embodied in the case agreed, the Court was of opinion that the loss should fall upon the fund, and rendered judgment against the receiver for the residue in his hands with interest, instead of the larger sum of $2,203.78 which he owes, if charged with the sum so lost.

From this judgment the relator of the plaintiff appealed.

*Mr. R. O. Burton*, for the plaintiff.

*Mr. W. H. Day*, (*Messrs. J. M. Mullen* and *Daniel* also filed a brief,) for the defendant.

SMITH, C. J., (after stating the facts). It is manifest that there being no guardian, the receiver was appointed to act substantially as such, in taking care of and disbursing the fund. He is allowed to expend the income in the maintenance and education of the infants during the succeeding twelve months, and required to make annual returns, "to be passed upon and audited" by the Judge presiding. While a receiver generally, as a trustee, is responsible only for the consequences of his own neglect, and is protected when he acts in entire good faith in the management of the estate committed to him, yet the measure of duty and responsibility is to be found in the capacity in which he acts. In this case he is a *quasi* guardian, required to keep the money safely invested and bearing interest, which he may expend as income, for the infants; so that we may find in the similarity of functions, some aid in determining the liability of his office, in ascertaining that of guardians.

Now, we think a guardian would be deemed derelict who should thus invest the estate of his wards, by deposit in another State and without security. However solvent may be the person or persons to whom, as principals, money is loaned, it is his duty to require further security. *Boyett* v. *Hurst,* 1 Jones Eq., 166.

While this is a positive obligation imposed by statute, it is a recognition of a safe rule for the preservation of the property, whose whole management is entrusted to the control and discretion of the trustee. Moreover, it was an improvident disposition to place the fund not only in a bank in another State, but also far from his personal oversight and observation, which were due in order to its preservation.

Furthermore, it is made the duty of the guardian to render his annual account and report the manner and nature of such investment as he may have made of the trust estate, *The Code,* §1617, *Moore* v. *Askew,* 85 N. C., 199, to the end that the sanction or direction of the Court may be had for every act which could affect the ward or his estate. Is not this duty implied, and as much needed, when the receiver as a *quasi* guardian, is managing the trust fund? Had he reported the deposit and been sustained by the Judge, he would have had ample protection. It was at his own risk that he neglected to secure this sanction. We do not impute to the receiver any intentional dereliction in the premises, for the unusual order dispensing with bond and securities shows the confidence both of the Court and counsel in his personal integrity and fitness for the place, and we have no doubt that it was well merited, but we are indicating and enforcing a statutory rule of fiduciary obligation, necessary for the security of fiduciary interests. We are aware of cases, indeed they are numerous, where a receiver is held justified in using banks as depositaries and disbursing agents, as affording facilities in the settlement of estates and in transmitting money by bill to distant residents entitled, as in *Knight* v.

---
---

*Lord Plymouth*, 3 Alk., 480; *Rowth* v. *Howell*, 3 Ves., 565. To like effect is the ruling in *Railroad* v. *Cowles*, 69 N. C., 59.

These, however, are acts done in discharge of a duty, to which such agencies furnish great facilities, and are strictly proper. But the present case is different. The receiver insists and takes a security in the form of an assignable certificate, designating, it is true, the character of the fund, as in other cases of making a loan. He leaves the fund for a considerable period, without asking the advice, or making known what he has done, to the Judge, whose officer he is, and under whose authority he acts. Under the circumstances, we think there has not been that circumspection and vigilance due from the trustee, and that he ought to make good the loss.

Judgment reversed, and judgment for the whole amount. The residue of the judgment will not be disturbed.

Error.                                         Reversed.