W. C. MOORE and WIFE *et al.* v. M. L. EURE, Adm'r of JAMES SEARS.

*Administration—Executors and Administrators—Devastavit.*

1. Good faith, and the exercise of ordinary care, and reasonable diligence are all that is required of executors and administrators in the execution of their trusts.

2. The statute—*The Code*, § 1543—authorizing executors and administrators to pay funds, belonging to the estates which they are administering, into the office of the Clerk of the Superior Court is not mandatory.

3. Where an administrator, a resident of Virginia, found, at the time of his qualification, a considerable sum to the credit of the estate in a bank in Virginia of good repute for solvency, and from time to time added other funds to the deposit, but paying out the moneys as rapidly as those who were entitled would receive it, and the bank failed ; *Held* that he was not guilty of a *devastavit*.

(*Collins* v. *Gooch*, 98 N. C., 190, *distinguished*.)

This is a CIVIL ACTION brought in the Superior Court of GATES COUNTY by the distributees and devisees of James Sears, against his administrator *de bonis non cum testamento annexo* for an account and settlement of the estate.

At Spring Term, 1887, the cause was referred for an account, and was heard upon exceptions to the referee's report by *Montgomery, J.*, at Spring Term, 1888.

The following are the facts agreed upon, and upon which the referee based his account:

" 1. James Sears died in 1870, domiciled in Gates County, leaving a will, in which his widow, Mary A., was named and qualified as executrix.

2. Mary A. died in 1884, domiciled in Gates County, N. C., and letters of administration *de bonis non cum testamento annexo* were only issued to the defendant on January 24, 1884.

3. At the time of her death the said Mary A. had on deposit, in her name as executrix, in the Exchange National Bank of Norfolk, Va., the sum of $1,530.33, belonging to the estate of her testator, and also had in the bank of Burruss, Son & Co., of Norfolk, Virginia, the sum of $771.47, belonging to said estate.

4. Shortly after the death of Mary A., and the qualification of the defendant Eure, he had the fund in the Exchange National Bank transferred to his own name in that Bank as administrator of James Sears, and on the same day drew the fund from the bank of Burruss, Son & Co., and deposited the same, with other funds of the estate, in the Exchange National Bank with the fund already there in his name as ad-

ministrator as aforesaid, and this account and the funds of the estate were kept separate from any other money of the said Eure, and at the time of the failure of said Exchange National Bank, on the 2d day of April, 1885, he had in the bank to his credit on this account the sum of $2,439.50.

5. That at the time the said Eure opened his administrator's account at said bank, and continuously thereafter to its failure, it was regarded as one of the safest, best managed, and most solvent institutions of the kind south of the Potomac. No one doubted its solvency, and it was used as the place of deposit by the leading and most cautious business men and capitalists in Virginia and Eastern North Carolina, and the defendant so regarded it; and had then, and had had for several years, his individual bank account at said bank, and sustained considerable private loss by its failure, he being a resident of Norfolk, Virginia. The firm of Eure, Farrar & Co., of which the defendant was a member, also kept an account at said bank, and at times had considerable money on deposit there.

6. Prior to the qualification of the said Eure as administrator of said estate, Uriah Vaughan, of Murfreesboro, had been appointed receiver of the estate of the plaintiffs; and in less than thirty days after the said Eure qualified and had the funds in the Exchange Bank transferred to his name as administrator, and made the deposit of the funds from Burruss, Son & Co. at said bank, he wrote to Vaughan and informed him that he had the funds on hand in bank, and desired to pay them to him as receiver. The said Eure did not receive any answer to his letter, but shortly thereafter saw Vaughan in Norfolk, and stated to him that he had the money in bank and desired him to receive it for the plaintiffs, and Vaughan replied that he did not want to be troubled with it, and that he, Eure, could take care of it as well as he could.

7. At the time of the qualification of Eure as administrator all of the plaintiffs, except Victoria, were minors, and prior to the failure of the bank Eure had paid off the indebtedness of the estate known to him, and paid to Victoria the amount charged in the account against her, which was approximately her part of the funds collected up to that time.

8. Shortly before the failure of the bank plaintiff Henrietta became of age, to-wit: January, 1885, but was married February, 1883, and still is under coverture, and Eure paid to her the sum of $300.00, in part of her share, and offered to pay her another $100.00, but she stated that she did not need it at that time. All the other plaintiffs were minors at the time of the failure of the bank.

9. The money in said bank, at the failure, belonged to the plaintiffs in this action under the will of the said Sears."

The plaintiffs excepted to the report and account filed by the referee, for that " he charges the defendant with the amount received in dividends from the receiver of the Exchange National Bank only, when he ought to have charged him with the full amount, $2,477.03, on hand at the date of the failure of said bank, April 2, 1885, with interest on the same to that date."

The exception was overruled by the Court, and judgment rendered in accordance with the report, from which the plaintiffs appealed.

*Messrs. Pruden & Vann*, (by brief), for the plaintiffs.
*Mr. L. L. Smith*, for the defendant.

DAVIS, J., (after stating the case). The single question presented for our consideration is as to the liability of the defendant administrator for the loss sustained by the failure of the Exchange National Bank.

The case shows, and it is conceded, that the defendant acted in perfect good faith, but the counsel for the plaintiffs insist:

1. That it was the duty of the defendant when the receiver Vaughan declined to receive the money to "take proper steps to make him do so, or pay the amount into the Clerk's office, in discharge of his obligation, in accordance with the provision of *The Code*, § 1543."

This is authorized by the statute, but it is not required— the statute is not mandatory—it only declares that " it shall be competent for any executor, administrator or collector, &c., * * * * to pay into the office of the Clerk of the Superior Court," &c. It is not made his duty to do so, and there may sometimes be reasons for not doing so.

2. It is further insisted for the plaintiffs that the defendant committed a *devastavit* in carrying the money out of the State and beyond the jurisdiction of our Courts, and to sustain this position *Collins* v. *Gooch*, 97 N. C., 186; *Lucas* v. *Wasson*, 3 Dev., 398; *Pitt* v. *Petway*, 12 Ired., 69; *Wicker* v. *Grim*, 80 N. C., 343; *Strauss* v. *Crawford*, 89 N. C., 149; *Havens* v. *Lathene*, 75 N. C., 506, are cited and relied on.

The case of *Collins* v. *Gooch* is unlike this. In that case the receiver was acting for minors under the appointment of the Court, with duties clearly and well defined in the order appointing him. While no intentional dereliction of duty was imputed to him, for it appeared that he acted in perfect good faith, yet the order under which he was acting made it his duty to make annual returns to the Court to be passed upon and audited, in the cause thus pending, by the presiding Judge. This he failed to do. He was, as was said by the Court, a *quasi* guardian; and it was further said, that if he had reported the deposit, as it was made his duty to do, and been sustained by the Court, he would have been protected. The other cases cited by the counsel for the plaintiff (except the last) are cases in which it is held that one tenant in common of personal property cannot carry the common property beyond the limits of the State without the consent of his co-tenant; and if he does so, it is a conversion

for which an action will lie.   Tenants in common have an equal right to the possession of the common property, and we fail to see the analogy between the cases cited and that before us.

The administrator is appointed by the Court, and is required to take an oath and give the bond required by law, and a non-resident who does this is not included in the disqualifications of *The Code*, § 1377.   Administrators, whether resident or non-resident, are required to give bond, and so are executors who reside out of the State—*The Code*, § 1515—and these bonds are for the protection of those interested in the estate committed to their charge against loss resulting from bad faith or negligence.   Good faith and the use of ordinary care and reasonable diligence are all that can be required of executors and administrators, whether resident or non-resident.   They are not insurers.   *DeBerry* v. *Ivey*, 2 Jones Eq., 370; *Nelson* v. *Hall*, 5 Jones Eq., 32.

Even guardians, whose duties in regard to investments are prescribed, while held to the highest degree of good faith, are not bound as insurers.   *Covington* v. *Leak & Wall*, 67 N. C., 363; *Atkinson* v. *Whitehead*, 66 N. C., 296.

The " hard rule upon public officers," enunciated in *Havens* v. *Latham*, has never been held to apply to executors and administrators.   There is no error.

Affirmed.