Ruffin, C. J.
 

 From the circumstances, under whieh the settlement was made with the plaintiff, just after he came of age, and when he was sick, and without advice, and was reluctant, on those accounts, to enter into it, the release could not stand in the plaintiff’s way, if any undue advantage had been gained therein by the guardian. But it seems to the Court, that putting aside the settlement and release, the plaintiff is not entitled to any relief upon the other facts; as the money was, we think, .honestly and properly invested by the defendant, and, therefore the plaintiff had a right to claim the bond, as property, and so, likewise, the defendant had a right to
 
 *242
 
 insist, that the plaintiff should take it as his property. Possibly, if there were no statute upon the subject, it might be deemed
 
 laches
 
 in a guardian to let money lie on the personal responsibility of the debtors. We should, indeed, rather conclude otherwise, in the state of our country, where there are so few opportunities of investment in public securities, and for small sums on mortgages on real estate. But the Act of 1762 puts the matter at rest, by making it the duty of a guardian to lend the surplus money of the ward upon bond with good security, with interest payable annually or compounded. As the guardian isa trustee merely, he is entitled to all the protection of trustees, which arises from obedience to the law in good faith. Therefore the ward is bound to take a bond in discharge of the guardian, which the latter properly took and has not made his own by fraud or
 
 laches.
 
 The Court has said, that such bonds, in truth, belong to the ward; and that, although they are negotiable, one, who takes them from the guardian with notice, must account for them to the ward.
 
 Powell
 
 v.
 
 Jones,
 
 1 Ire. Eq. 337,
 
 Exum
 
 v.
 
 Bowden,
 
 4 Ire. Eq. 281. It follows, that, in equity, the guardian is entitled to transfer the bonds to the ward in satisfaction, and is not bound to pay the ward, in money, as the defendant seems, by mistake, to have supposed. Indeed, the statute expressly provides, that the guardian may assign any uncollected bonds to the ward and that such assignment shall be a discharge
 
 pro tanto.
 
 And it is clear, that the assignment is one, that will enable the ward to collect the money by suit in his own name, and not to charge the guardian as
 
 endorser;
 
 for the same section provides, that the guardian shall be liable for the money, only when the borrowers and the sureties are likely to become insolvent, and the guardian shall not use all lawful means to inforce payment. The Court, therefore, holds, that in this case no imposition was practised on the plaintiff, in inducing him to discharge
 
 *243
 
 his guardian upon receiving the bond in question ; for the guardian acted
 
 bond fide
 
 and rightly, in taking the bond and in not collecting the money, since the debtors were deemed perfectly good up to the time when he parted from the bond, and were so deemed, not only by him, but by the plaintiff, and the whole community, without a single exception, as faras appears. It is purely a question of loss between two innocent persons ; and sure« ]y the guardian, who would not be allowed to make a profit for himself, and acted on behalf and for the benefit of the plaintiff, ought not to bear the loss; but it must rest with the plaintiff, as the .equitable owner of the bond.
 

 Per Curiam.
 

 The bill dismissed with costs.