CASE 101—PETITION EQUITY—JUNE 20.

# Lyne by, &c v. Perrin's Administrator.

APPEAL FROM HARRISON CIRCUIT COURT.

1. GUARDIAN AND WARD.—Where in a suit involving the settlement of a guardian's accounts the guardian was credited by the amount of certain notes belonging to the wards in arriving at the amount for which judgment was rendered against him, and it was recited in the judgment that these notes "are not charged to the defendant in making up the judgment. The plaintiffs may hereafter make claim on account of said notes if they are not collected," that judgment is not a bar to this action by the wards against the guardian and his sureties to recover the amount of such of those notes as have not been collected. The fact that payments made on the notes have by mistake been credited on the judgment upon the idea that the notes were taken into account in making up the judgment does not affect the right of the wards to recover of the guardian and his sureties the amount of the unpaid notes.

2. IF A GUARDIAN REMOVES THE PROPERTY OF HIS WARDS FROM THE STATE without sanction of a court of chancery jurisdiction, in violation of sec. 18 of chapter 48 of the General Statutes, the sureties in his bond become liable on his failure to account therefor. And where a guardian accepts the notes of non-resi-

Lyne by, &c v. Perrin's Administrator.

dents for any part of the estate of his ward it amounts to a re-
moval of so much of the property of the ward from the State, and
the guardian and his sureties are liable for the amounts of the
notes without regard to whether they could have been collected. .

J. W. LUCAS FOR APPELLANTS.

1. The judgment in the suit for settlement of the guardian's accounts
is not a bar to the recovery sought here because that judgment
expressly authorized appellants to make claim for these notes in
case they were not collected.
2. If Perrin was credited by these notes then appellants are entitled
to recover their full amount because of his having removed his
ward's property out of the State and because of his failing to
take good security.   (Gen. Stats., p. 707, sec. 18; Clay v. Clay, 3
Met., 548; Campbell v. Golden, &c., 79 Ky., 544.)

J. Q. WARD OF COUNSEL ON SAME SIDE.

J. I. BLANTON FOR APPELLEES.

1. Perrin was charged with every dollar that came into his hands,
and when the court omitted these Texas notes it omitted them as
a credit claimed by Perrin, not as an asset of the estate that he
had not charged himself with.
2. The fact that the May note of over $780 was credited on the judg-
ment shows the construction which the parties put upon the
judgment, and supports the contention of appellees.

JUDGE PAYNTER DELIVERED THE OPINION OF THE COURT.

Minnie S., Margaret R. and Robert B. Lyne were infants,
and A. Perrin duly qualified as their guardian in the Har-
rison County Court.   Failing to properly manage the estate
of his wards, he was removed and the appellant, H. C.
Smith, was appointed and duly qualified as the guardian of
the infants.

The appellees, Leonard Drane, John C. May, T. J. Megib-
ben and G. H. Perrin, were the sureties in the bond which
A. Perrin gave as guardian of the infants.   Megibben and
G. H. Perrin died and their personal representatives were
made defendants.

Quite a large estate came into the hands of A. Perrin as guardian. Upon the appointment of H. C. Smith as guardian, he instituted suits for his wards in the Harrison Chancery Court, to enforce a settlement of the accounts of the previous guardian. The court referred the question of accounts to a commissioner, who made reports in the cases. Perrin was charged with such sums as came to his hands, and was given certain specified credits. Exceptions were filed to the reports made by the commissioners. It appeared in the cases that Perrin held three certain notes dated March 1, 1888, for the sum of one thousand, seven hundred and ten dollars and seventy-five cents, each executed by the Gray Bros., one of which was payable in three years, one in four years and the other in five years from date. They were made payable to Perrin as guardian of the infants.

The Gray notes were called Texas notes, as the makers lived in Texas. In making the statement of the accounts the commissioner charged Perrin with the various sums coming to his hand and credited him with various sums and, among others, the Gray Bros.' notes and one note for about seven hundred dollars, known as the May note. In thus stating the accounts the commissioner ascertained and reported the balance due each ward. The commissioner found to be due from their guardian, sums as follows:

To Minnie S. ................$5,113 86
To Margaret R. .............. 5,996 98
To Robert B. ................ 6,470 27

In doing this, as stated, Perrin was credited with the Gray Bros. and May notes.

The court in rendering judgment, said: "The court has examined the cases as if there had been no reports, and it is not unpleasant to find that the judgments do not differ widely from the *findings* of the special commissioner."

The court gave judgments against Perrin in favor of the wards, as follows, viz:

Minnie S. .....................$5,160 00

Margaret R. .................. 5,720 00

Robert B. .................... 6,260 00

In the judgment fixing the foregoing sums as being due the respective wards, the court said: "It is remarked that the Texas notes and the May notes, on account of which the plaintiffs make claim, are not charged to the defendant in the making up of the judgment. The plaintiffs may, hereafter, make claim *on account of said notes* if they are not *collected.*" Perrin failing to pay the sums adjudged against him, the appellants instituted an action against his sureties and recovered a judgment against them for the amounts due the wards as fixed by the judgment, less payments made subsequent thereto.

In the meantime the May notes had been collected, and to our surprise, it appears to be credited on the judgment which appellants secured against the sureties. Failing to collect the Gray or the so-called Texas notes, the appellants instituted suits to recover the amount thereof and the interest thereon. It is alleged in the petition that the guardian has been unable to collect them; that he has been making an effort to do so; that he has been unable to collect them, except a little interest thereon; that F. B. Gray, Frank Gray and Geo. C. Gray constituted the firm of Gray Bros.; that they were non-residents at the time the note was executed, and have been, ever since, residents of the State of Texas; that the notes were excuted in Texas and that the property held by them is not subject to execution.

In short, the petition shows that appellant has been unable to collect the Gray notes. The appellees, in the first paragraph of their answer, controverted some of the alle-

gations of the petition, but, however, not denying that the Grays were non-residents when the notes were executed and had been since the execution thereof, and that they had no property subject to execution.

In the second paragraph of the answer it is claimed that under the judgment against Perrin, he was charged with all the money which came into his hands as guardian; that Perrin claimed in the action, credit for the Gray and May notes, which was disallowed and did not enter into the account in making up the judgment rendered against Perrin. In the third paragraph of the answer, appellees allege that the appellants, as heretofore stated, sued them and recovered judgment for the several amounts adjudged against Perrin; that the judgment has been almost satisfied; that appellants collected the May notes amounting to seven hundred and eighty dollars and ninety-three cents and credited it on the judgments; that appellants had collected three hundred and seven dollars and ninety-five cents interest on the Gray notes and credited that on the judgments and pleads the judgments recovered against the appellees, and the act of crediting the judgments with the May notes and interest collected on the Gray notes, as a bar to appellant's right to recover in these cases. .

It is also claimed in the third paragraph of appellee's answer that when they satisfy the judgments against them, then they are entitled to the Gray notes, and that they be adjudged to them. Plaintiff filed a demurrer to the answer, and on consideration thereof, the court overruled the same, but sustained it to the petition. Appellants refusing to reply, the court dismissed the petition, from which action of the court this appeal is prosecuted.

The court below must have proceeded upon the theory that the judgment against Perrin did not reserve any right

in the appellants to the Gray and ·May notes, ·or if it did, it
was lost by a recovery against the appellees for the amounts
which the court adjudged against Perrin.    Neither of which
positions is tenable in the light of the record.  It is per-
fectly manifest from the commissioner's report that Perrin
was credited with   the Gray·and   May notes.     Indeed it
is clearly stated in the reports that he was so credited.   In-
stead of having the cash to pay on the amounts which he
owed his wards, he sought to do so in part by these notes.
It is true, the court says he examined the cases as if there
had been no reports, but says the "judgments do not differ
widely from the findings of the special commissioner."

It is true that his judgments did not differ widely from
the findings of the commissioner, because the court gave
Minnie S. judgment for forty-six dollars and fourteen ·cents,
more than allowed her by the report.   Margaret R. was
given judgment for two hundred and seventy-six dollars and
ninety-eight cents less than was allowed by the commis-
sioner, and Robert B. ·was given judgment for two hundred
and ten dollars and twenty-seven cents less · than the
amount found by the commissioner.   It was the evident pur-
pose of the court to save Perrin's sureties if possible from
the payment of the amount represented by the Gray. and
May notes, and that they should not be required to pay the
sums represented by them until it was seen whether the
parties owing them would pay them, the court recognizing
that it would not be just to the wards to credit their guar-
dian with such sums without reserving the right in the
wards to assert their claim to such sum upon failure to
collect the notes which represented them.

The appellants were. making claim against Perrin for the
amount of these notes, or, rather, controverting the·right of
Perrin to a credit for the amounts thereof.    This court said

in its judgment that they were "not charged to the defendant in making up the judgment."

This is true, because they had been credited to Perrin in making up the judgment. If they had been charged to him in that judgment, or to use another way in stating the matter, by saying had they or the amounts thereof not been credited to Perrin, then the amount due each ward would have been increased nearly two thousand 'dollars. The chancellor used the word charge in contra-distinction to the word credit, as used in the report of the commissioner with reference to the notes in question. As a matter of fact they were not charged to Perrin.

If, as contended by appellees, the notes were not taken into account in making up the judgment, and, therefore, belong to them, why did the court further say in the judgment "the plaintiffs (appellants) may, hereafter, *make claim on account* of said notes, if they are not *collected.*

If the claim growing out of the notes was fully settled by the judgment, why did the court reserve appellants' right to make claim on account thereof, if not collected?

We have not the slightest doubt that the court did reserve the right in the appellants to assert claim on account of their notes, if they were not collected.

If this was not true, the chancellor, whose duty it was to protect the estate of infants, would have made doubtful the preservation of over five thousand dollars of their estate, if not caused absolutely the loss of that amount to the wards.

It appears, from the petition, that the Grays were, when the notes were executed, and are now, non-residents of the State. If it be true that they were given for part of the wards' estate, and not for an individual debt of Perrin, though payable to him as guardian, then the sureties in his

bond as guardian are liable to the wards for the amounts
thereof with interest properly computed.

Section 18, article 2, chapter 48, General Statutes, reads as
follows: "Resident guardians shall not remove out of this
Commonwealth any of the property of their wards, without
first obtaining the sanction of a court of chancery jurisdic-
tion, held in the county in which the guardian was qualified,
and such court, upon petition sworn to by the guardian, and
such proof as may be deemed necessary, may authorize the
removal of the property of the ward out of this Common-
wealth, upon such terms and conditions as may be equita-
ble and just, and as will secure and protect the rights and
interest of the ward. Guardians may be restrained from
the unlawful removal of the property of their wards or any
part thereof, out of this Commonwealth, upon the petition of
the ward by next friend, or upon the petition of any surety
of the guardian in his bond as such."

This provision of the statute was enacted to protect
wards and the sureties on the bonds of guardians. If any
surety of the guardian in his bond was made aware of the
intention of the guardian to remove his ward's property
from the State without the sanction of a court of chancery
jurisdiction, he had the right to proceed to have such guar-
dian restrained.

The policy of the law was to keep the property of their
wards within the jurisdiction of the court, that the
rights of wards may be protected, and their property pre-
served. This section has reference to notes, bonds, money,
personal property, in fact every species of property which
may lawfully come to the hands of a guardian.

If a guardian removes such property from the State with-
out the sanction of a court of chancery jurisdiction, his
sureties on his bond as guardian become liable on his failure

to account therefor., The wards are not compelled to go into another jurisdiction to try to recover their estate. If the guardian fails to account for it his sureties must do so.

There is an immaterial issue attempted to be raised by the pleadings. Appellants claim the notes were executed in Texas. Appellees claim they were executed in Kentucky. It is wholly immaterial where they were executed. If executed in Kentucky by non-residents for some part of the estate of the wards, it amounts to a removal of so much of the property from the State.

If the notes had been executed for money by non-residents of the State, the effect is to remove that much property from the State. It does it as effectually as if the guardian had carried it out of the State and loaned it to non-residents of the State.

It is insisted that the judgments against the appellees, and the fact that appellants credited the judgments with the May note and some interest collected on the Gray notes, bars a recovery in these cases.

This contention is without merit.

In the judgment which it is claimed bars a recovery in these cases, language appears as follows, to-wit: "This judgment by agreement of parties is in no way to affect the claims of the plaintiffs, or either of them, in any action or actions that they or either of them upon the notes or either of them may have or may hereafter bring against defendants or either of them upon the notes, or either of them, known as the Texas notes, nor is this judgment in any way to estop, prevent or preclude the defendants from claiming and asserting their rights to said notes upon the satisfaction of this judgment, either in suits pending or any that may hereafter be brought, or any other defense they may have thereto."

To quote the foregoing seems to be a sufficient answer to

the contention that the judgment bars a recovery. It expressly reserves such rights as either party had under the judgment against Perrin rendered by the chancery court.

We can not agree with counsel that giving credit for the May note and the interest on the Gray notes estops appellants from asserting claim to the amount of the Gray notes.

As heretofore, stated, Perrin received credit in the first judgment for the May note. When the sureties in his bond were again credited therewith, it was twice giving credit therefor, and it was an error to do so to the prejudice of the wards.

The effect was the same in giving credit on the judgment against the sureties for the interest collected on the Gray notes. The condition of the items just mentioned was the same as the Gray or Texas notes. Because two errors in the matter of credits were committed against the wards amounting to nearly $1,100, is no reason why the court should now deprive them of several thousand more.

While this court regrets that the unfaithfulness of a guardian causes great loss to his sureties, still the bonds required of guardians are the only protection which the law affords infants.

The demurrer to the answer should have been sustained, and the court erred in sustaining it to the petition.

Judgment reversed, with directions that further proceedings be had consistent with this opinion.