D. E. COBB, ADMINISTRATOR, v. GEORGE M. FOUNTAIN AND R. S. FOUNTAIN, ADMINISTRATORS.

(Filed 5 March, 1924.)

1. **Guardian and Ward—Estates—Settlement.**

The general principle that a guardian may discharge himself of his trust as such by turning over to the person lawfully entitled thereto whatever security he may have taken in good faith, as guardian, as a result of the prudent management of his ward's estate, and thus discharge himself of liability, is subject to the exception that there be not special reason existing to the contrary.

2. **Same—Trusts.**

While the word "trust" in its application to a guardian in the management of his ward's estate has a more restricted significance, upon his qualification as such, he assumes all the responsibilities of his position and obligates himself to exercise such care and diligence in the management of his ward's estate as a man of ordinary care, prudence and intelligence uses in the management of his own business.

**3. Same—Presumptions—Prima Facie Case—Evidence—Questions for Jury.**

The complaint in an action against a guardian alleged that he had loaned money of his ward's estate to one beyond the State, and the jurisdiction of our courts, on a note that was long past due and unpaid; and upon demurrer, considered as admitting these allegations, it was *held* the circumstances of this transaction made out a *prima facie* case that he had not acted with the care or prudence required of him, and raised the issue for the jury to determine.

APPEAL from *Connor, J.,* at November Term, 1923, of EDGECOMBE. The material allegations of the complaint are substantially these: (1) Several years ago G. M. T. Fountain, deceased, qualified as guardian of Nancy L. Hargrove (who at that time and afterwards until her death was insane and confined in the State Hospital at Raleigh) and had the sole management of her estate. (2) As such guardian he loaned $2,400 (her money) to a resident of South Carolina and took as security therefor a mortgage or deed of trust on real property, situated in that state. (3) He never reported to the court the nature of this investment and never had the court's approval of the loan. Excepting interest no payments have been made, and it is not improbable that the loan or a part of it will be entirely lost. (4) Nancy Hargrove died in 1921 and the plaintiff is her administrator. (5) G. M. T. Fountain died in 1923 and the defendants are the administrators of his estate. (6) The note for said $2,400 with interest is overdue. (7) The plaintiff as administrator of Nancy L. Hargrove made demand upon G. M. T. Fountain and, after his death, upon the defendants as his administrators for the payment of said loan and interest, and the defendants have neglected and refused and still neglect and refuse to pay to the plaintiff the amount so demanded. (8) The plaintiff is ready to settle in full as administrator of his intestate and to file his final account, and is prevented from doing so by the failure of the defendants to make payment of said loan. (9) The estate of said G. M. T. Fountain is solvent.

The plaintiff prays judgment against the defendants for $2,400, with interest thereon from 14 January, 1923, and costs.

The defendants demurred to the complaint on the following grounds:

1. It does not show that defendant's intestate failed to use such degree of care and prudence as guardian of plaintiff's intestate as to render his estate liable for any loss plaintiff's intestate's estate may sustain.

2. It does not show that plaintiff's intestate has sustained any loss or damage.

3. It does not allege that said loan was not made in good faith and in the exercise of that degree of care and diligence required by law.

4. Said complaint does not show that said transaction complained of has ever been repudiated by plaintiff or those he represents.

5. Such complaint fails to set forth facts and circumstances neces-sary to charge the defendant's intestate's estate with personal liability.

Judge Connor overruled the demurrer, and the defendants appealed.

*Allsbrook & Phillips for plaintiff.*
*Geo. M. Fountain for defendants.*

ADAMS, J. As a general rule a guardian may discharge himself at the termination of his trust by turning over to the person lawfully entitled thereto whatever securities he may have taken in good faith as a result of the prudent management of his ward's estate. Schouler's Domestic Relations, 544, sec. 386. "The ward is bound to accept a bond in discharge of a guardian which the latter properly took and has not made his own by fraud or laches. The Court has said that such bonds, in truth, belong to the ward, and that although they are negoti-able, one who takes them from the guardian with notice must account for them to the ward. *Powell v. Jones,* 36 N. C., 337; *Exum v. Bow-den,* 39 N. C., 281. It follows that in equity the guardian is entitled to transfer the bonds to the ward in satisfaction and is not bound to pay the ward in money. Indeed, the statute expressly provides that the guardian may assign any uncollected bonds to the ward and that such assignment shall be a discharge *pro tanto.*" *Ruffin, C. J.,* in *Good-son v. Goodson,* 41 N. C., 238, 242; Rev. Sts. of N. C., Vol. I, 310; C. S., 2308, 8107. But this general rule, like most others, is subject to excep-tion. Hence, the Court afterward said: "It cannot be doubted that a guardian may discharge himself by delivery over to the ward upon a settlement of the notes which he has taken as guardian, provided there be no special reason to the contrary." *Whitford v. Foy,* 71 N. C., 527. Since the demurrer admits the truth of the complaint, the question is whether the facts alleged bring the case at bar within the proviso.

While in its more restricted acceptation the word "trust" may have acquired a meaning distinct from the confidence usually reposed in one who sustains to another the relation of guardian, it is nevertheless established as a rule of equity that where a person qualifies as the guardian of an estate and engages to act upon the trust and confidence thus reposed in him the court, in order to protect the estate, will deal with him as a trustee. Upon this principle the intestate of the defend-ants, upon his qualification as guardian, assumed all the responsibilities and duties of his position and obligated himself to exercise such care and diligence in the management of his ward's estate as men of ordi-nary care, prudence, and intelligence use in the management of their own business. His trust called for the exercise of good faith, for his personal oversight and supervision of the trust funds, and for the ob-

servance of the statutory provisions relating to his fiduciary obligation. Tiffany's Persons and Domestic Relations, 318; Schouler's Domestic Relations, 451, sec. 321; Black on Trusts and Trustees, Vol. II, sec. 499; *Moore v. Askew,* 85 N. C., 199; *Collins v. Gooch,* 97 N. C., 186. In the management of his ward's funds, did the guardian exercise the degree of care demanded by the exigency of his trust?

As it is more prudent for a guardian to invest trust funds in his own State, where they may be kept under his immediate observation and within the jurisdiction of the domestic courts, we think the investment of his ward's money in securities which are beyond the jurisdiction should be disapproved unless made under rare and exceptional circumstances. The precise question has not heretofore been considered by this Court. In *Collins v. Gooch, supra,* the receiver of an estate belonging to minors deposited some of their money in a bank in Norfolk without taking additional security, and the bank failed. The Court held that the guardian was liable for the loss, and remarked: "We think a guardian would be deemed derelict who should thus invest the estate of his wards by deposit in another State without security. However solvent may be the person or persons to whom, as principal, money is loaned, it is his duty to require further security." The decision turned upon the lack of security rather than the place of investment; but both questions were discussed in a case decided by the Supreme Judicial Court of Maine. There it was said: "It is true that it probably sufficiently appears upon the face of the account that these three items were investments without security, and also that they were made beyond the jurisdiction of the Court. The former infirmity renders the accountant responsible for all losses thence arising, *Mattocks v. Moulton,* 84 Me., 545, and the latter, except under peculiar circumstances nonexistent in the case at bar, also subjects him to the peril of responsibility for the safety of the fund." *In re Moore,* 112 Me., 119; Ann. Cas., 1917 A, 645.

Other courts have reached substantially the same conclusion, as will appear from a few excerpts. "While, therefore, we are not disposed to say that an investment by a trustee in another State can never be consistent with the prudence and diligence required of him by the law, we still feel bound to say that such an investment, which takes the trust fund beyond our own jurisdiction, subjects it to other laws ·and the risk and inconvenience of distance and of foreign tribunals, will not be upheld by us as a general rule, and never unless in the presence of a clear and strong necessity, or a very pressing emergency." *Ormiston v. Olcott,* 84 N. Y., 339, 343. "In view of the inherent objections to such investments, of the familiar rules of equity which regard them with distrust, and of the careful exclusion of such mortgages from the

broad range of permissible trust investments mentioned in the General Statutes, 495, we think that loans on promissory notes secured by mortgage of land in other States, and the purchase of such notes, cannot be regarded as *prima facie* a proper investment of trust funds; and that a trustee must justify such use of his funds by proof not only of good faith, but of due diligence on his part in ascertaining the safety of the particular investment." *S. v. Washburn,* 67 Conn., 187, 194. "The tutor had no right to send the minor's property beyond the State except for the collection of money due on obligations. He had no right or authority to invest these funds beyond the limits of the State and out of the jurisdiction of the court having jurisdiction of the tutorship." *Welsh v. Baxter,* 13 So. (La.), 629. See, also, *Selph v. Burton's Admr.,* 68 S. W., 407; *Lyne v. Perrin,* 31 S. W., 869.

While not disposed to hold that a guardian may never invest his ward's funds beyond the jurisdiction of the domestic courts, we are of opinion that such investment is *prima facie* improper and that upon proof thereof it is incumbent upon him, at the risk of an adverse verdict if he fail, to proceed with evidence tending to show that he has faithfully performed the duties imposed by his trust. In the instant case the question of the guardian's fidelity or dereliction—whether he faithfully discharged his fiduciary obligation or disregarded or abused his trust—will be determined upon a full disclosure of all the facts, many of which, if not all, were essentially within his personal knowledge. We think, therefore, that his Honor, by overruling the demurrer and granting time for filing an answer, appropriately opened the way for an inquiry into all matters by which the courts may finally adjudicate the question of the guardian's neglect of duty or exemption from liability.

We deem it not improper to say that the plaintiff's counsel have not assailed the character of the guardian or impeached his integrity or imputed to him any intentional failure to execute his trust. But they say that upon him and, after his death, upon his personal representatives devolved the duty of disclosing the facts pertaining to the investment with a view to securing a proper settlement of the controversy between the parties.

The judgment is

Affirmed.