STATE OF NORTH CAROLINA Ex Rel. RUTH TAYLOR ROBINSON v. LEON M. HAM, JR., SADIE STERN and W. W. HAM.

(Filed 1 February, 1939.)

**1. Guardian and Ward § 13—**

A guardian is not an insurer of loans and investments of guardianship funds, but is required only to act in good faith and in the exercise of due care and diligence.

**2. Same—**

A loan of guardianship funds on good and sufficient real estate security, within the jurisdiction of the court, is a proper investment.

**3. Same—Evidence held insufficient to show lack of good faith and want of due diligence on part of guardian investing funds in mortgage notes.**

Plaintiff relator's evidence tended to show that defendant guardian invested guardianship funds in notes secured by deeds of trust, one loan being made to the guardian's uncle and another to a corporation of which the guardian's father and uncle were officers, without evidence that the borrowers were insolvent and without evidence that at the time of the loans the value of the real estate was not sufficient to secure the loans. *Held:* The evidence is not insufficient, considered in the light most favorable to plaintiff, to show lack of good faith or want of due diligence on the part of the guardian in so investing the funds, and *held further,* evidence of the value of one of the lots some years after the loan thereon was made, and at a time when real estate values were at their low of the depression, is no evidence that its value was insufficient to secure the loan at the time it was made.

BARNHILL, J., dissents.

APPEAL by plaintiff from *Bivens, J.,* at April 18, 1938, Civil Term of GUILFORD.

Civil action to recover on guardianship bond for funds of ward received and loaned by guardian upon notes secured by real estate allegedly made carelessly and negligently and in lack of good faith.

Defendant denies material allegation of plaintiff.

The uncontroverted facts are substantially these: Defendant Leon M. Ham, Jr., on 8 April, 1927, qualified in the Superior Court of Guilford County as guardian of Ruth L. Taylor, minor, now Ruth Taylor Robinson, and on 8 April, 1930, he as principal, with defendants Sadie Stern and W. W. Ham, as sureties, executed and delivered a guardian's bond in the penal sum of $2,000.

Defendant guardian received for the benefit of his said ward $1,-364.34. On 1 December, 1930, he loaned $294 to F. C. Boyles, his uncle by marriage, taking his note therefor bearing interest at rate of 6 per cent per annum payable semi-annually, due 1 December, 1931, and secured by deed of trust duly executed and registered and conveying lot No. 45 of the Roseway subdivision, Greensboro, N. C. On 7 January, 1931, he loaned $945 to Ham Real Estate Company, a corporation of which his father was then president and said F. C. Boyles, secretary, taking its note therefor bearing interest at the rate of 6 per cent per annum, payable semi-annually, due 7 January, 1934, and secured by deed of trust duly executed and registered and conveying lot of land at Joyner's Corner on Warren Street in Morehead Township, Guilford County, North Carolina.

In report of date 27 January, 1930, guardian sets forth the receipt of $1,045 on 7 January, 1928, loaned to Ham Estate, Inc., the same day, and receipt of interest thereon to 7 January, 1930, and paid to use of his ward, leaving a balance of $1,045. In report of 25 November, 1931, the guardian reports payment of $100 to his ward on court order of 27 January, 1930, leaving a balance of $945, "secured by first mortgage executed by Ham Real Estate Company." This report also shows receipt from Mattie Gray estate the sum of $319.34, from which are deducted items paid to ward and to attorney, leaving a balance of $294, with notation, "first mortgage from F. C. Boyles, December 1, 1930, securing $294." This report bears endorsement: "Audited, approved and ordered filed and recorded. This Nov. 25/31. A. Wayland Cooke, C. S. C." In further reports of 1 April, 1933, 20 July, 1934, and 24 July, 1936, each contains items: "First mortgage secured by Ham Real Estate Co., $945," and "First mortgage secured by F. C. Boyles $294." In these reports there are listed items of interest received to 7 January, 1934, on Ham Real Estate Company loan, and to 1 June, 1934, on Boyles' loan, and paid to or for the use of ward, and for taxes from time to time.

Upon the ward becoming twenty-one years old on 4 January, 1935, she made demand upon the guardian for a settlement. Whereupon the guardian then, and on call of the case for trial below, offered to deliver the said notes and deeds of trust to her, but she has refused to accept same.

Plaintiff further offered witnesses who gave testimony tending to show: That when notified by the clerk to file final report the defendant guardian came in promptly, brought the notes and mortgages with him, discussed with the clerk how best to settle the estate, and on various occasions consulted with the clerk and stated that he wanted to do what was best for his ward under the circumstances; that the guardian came whenever the clerk sent for him; that, while he has not filed final report, the clerk did not advise him to sell the property and do so; that he could not file report until the property had been foreclosed; and, that the guardian informed the ward as to the nature of the loans and to whom made, and consulted with her and her husband about the wisdom of advertising and selling the property, she declining to advise or tell him to sell or not to sell.

Plaintiff further offered testimony tending to show that on 1 December, 1930, as against Lot No. 45 of the Roseway Division, there were street paving, sidewalk, sewer and other assessments, totaling more than $600, payable over a period of ten years, of which $217.72 was past due, but that others refinanced such assessments, and said assessments can now be refinanced by paying ten per cent of the amount due and balance over a period of nine years.

Plaintiff introduced one witness only as to values. He testified in substance that he had no opinion as to the market value of Lot No. 45 on 1 December, 1930, that he was paying no attention to town lots at that time, and that in his opinion the reasonable value of the lot on Warren Street on 7 January, 1934, was about $600; that he did not know the value prior thereto; that the lot is located between two settlements, one occupied by white people, and the other by colored people; that the banks closed in Greensboro about 1930 or 1931; that "in the years 1933 and 1934 we were at the height of the real estate depression. Property values had steadily declined. They reached the bottom about January 1, 1934. . . . Property is greatly increasing in value and I would put a higher price on it today."

At the close of plaintiff relator's evidence, motions of the defendants for judgment as in case of nonsuit were allowed. From judgment in accordance therewith, plaintiff relator appeals to the Supreme Court and assigns error.

*Younce & Younce for plaintiff, appellant.*
*Stern & Stern for defendants, appellees.*

WINBORNE, J. Taking the evidence in the light most favorable to plaintiff and giving to her the benefit of every reasonable intendment and reasonable inference to be drawn therefrom, is there sufficient evidence

of lack of good faith and want of due diligence on the part of the defendant guardian in making the loans challenged by plaintiff and in the management of his ward's estate to take the case to the jury? Careful consideration of all the evidence and review of the decisions of this Court impel us to hold in the negative.

It is a settled rule of law that a guardian is not an insurer of loans and investment of guardianship funds. All that sound public policy requires is that he shall act in good faith and in the exercise of due care and diligence. *Deberry v. Ivey,* 55 N. C., 370; *Nelson v. Hall,* 58 N. C., 32; *Sheets v. Tobacco Co.,* 195 N. C., 149, 14 S. E., 355; *Stroud v. Stroud,* 206 N. C., 668, 175 S. E., 131.

A loan of the ward's funds on good and sufficient real estate security, within the jurisdiction of the court, is always a proper investment. 28 C. J., 1142.

By statute, guardians in this State are given power to lend any portion of the estate of their wards, upon bonds with sufficient surety, which they may assign to the ward on settlement with him. C. S., 2308; *Goodson v. Goodson,* 41 N. C., 238; *Cobb v. Fountain,* 187 N. C., 335, 121 S. E., 614.

"As a general rule a guardian may discharge himself at the termination of his trust by turning over to the person lawfully entitled thereto whatever securities he may have taken in good faith as a result of the prudent management of his ward's estate." *Adams, J.,* in *Cobb v. Fountain, supra.*

In *Sheets v. Tobacco Co., supra, Connor, J.,* stated: "An investment of guardianship funds, made by a guardian, may be challenged by the ward or person entitled thereto upon a final settlement, upon the ground that such investment was not made in good faith and in the exercise of due diligence, unless such investment was expressly authorized by statute or by order of court obtained prior to the making of the investment. If the investment was made under statutory authority, or pursuant to an order of court, the guardian cannot be held liable for losses resulting therefrom, in the absence of fraud or gross negligence. In the case of investments not so expressly authorized, the good faith and due diligence of the guardian may be challenged, and if successfully challenged, he will be held liable for any and all losses resulting from the investment. Good faith and due diligence on the part of the guardian, however, will protect the guardian, and the sureties on his bond, from liability for losses."

Applying these principles to the factual situation of the case in hand, we fail to find evidence of bad faith on the part of the guardian, or of his failure to exercise due care and diligence in making the loans and in the management of the ward's estate, as charged by the plaintiff.

The loans were secured by deeds of trust on real estate. There is no evidence that at the time the loans were made the borrowers were insolvent, nor is there evidence that the value of the real estate conveyed as security for the loans was then insufficient security therefor. There is no evidence as to the value of one of the lots at any time. Evidence of value of the other lot in 1934, at the "height of the depression" when the values of land had steadily declined, standing alone, is no criterion for judging values in 1930 and 1931. Nor can we agree that making a loan to the guardian's uncle, and another to a corporation of which his father and uncle were officers, both loans being secured by real estate, nothing else appearing, is evidence of bad faith or lack of due diligence on the part of the guardian. While it is true that as against one lot there is evidence of past due assessments which were prior liens on the lot, the evidence shows that these assessments could be put in good standing by paying ten per cent of the assessment and spreading the remainder over a period of nine years. There is no evidence that at the time the loan was made the value of the lot was not sufficient security for the loan, even after taking into account the amount of the assessment liens. It is appropriate to note, too, that guardian's report on 25 November, 1931, showing these loans, was audited and approved by the clerk of Superior Court.

There is no error in the judgment dismissing the action as in the case of nonsuit.

Affirmed.

BARNHILL, J., dissents.