FIRST-CITIZENS BANK & TRUST COMPANY, Guardian, Successor to C. G. GRADY, Guardian of HENRY A. HODGES, Incompetent, v. JAMES D. PARKER and Wife, AGNES A. PARKER.

(Filed 17 October, 1945.)

**1. Bankruptcy § 9: Guardian and Ward §§ 13, 21—**

Where a guardian lends to himself a large part of his ward's estate, keeps no accounts, commingles the assets of the guardianship with his personal funds, and fails to account for the estate, a judgment against him, for the funds so unaccounted for, is not affected by the guardian's subsequent discharge in bankruptcy. Bankruptcy Act, sec. 17. 11 U. S. C. A. 35.

**2. Guardian and Ward §§ 13, 20, 21—**

It is the duty of a guardian to keep his ward's money and property separate from his own; to keep an account thereof; to make authorized investments, not in his own name, but as guardian; to keep those investments separate from his own; and, when called upon to do so, to account for same either in cash or in approved securities.

**3. Guardian and Ward § 21—**

While a guardian is held to a high degree of diligence and good faith, he is not ordinarily an insurer of funds which come into his hands.

**4. Guardian and Ward §§ 13, 21—**

If a guardian, in good faith and with due diligence, invests the funds of his ward in loans upon real estate in which he has no interest and loss occurs by reason of the subsequent depreciation in value of the security or other cause over which he has no control, he is protected from liability therefor. And he may discharge himself at the termination of his trust by turning over and accounting for authorized investments, taken in good faith as a result of prudent management, even though such securities are not then worth face value.

**5. Same—**

A guardian has no right to mingle guardianship funds with his own and use them as such or to profit by the use thereof, and if he does so commingle such funds and use them in his own business or for his personal advantage, he is guilty of a conversion.

**6. Same—**

Embarking the ward's funds in business ventures is such a violation of the trust as to make the guardian and his sureties immediately liable for a conversion of the funds, unless done in accordance with statute. (G. S., 33-23, -24.)

**7. Bankruptcy § 9: Guardian and Ward § 21: Fiduciaries § 2—**

"Defalcation" as used in criminal statutes implies some moral dereliction, but in sec. 17 of the Bankruptcy Act, 11 U. S. C. A. 35, it is a broader term and includes any failure of a guardian or other person acting in a fiduciary capacity to account for trust funds. Examples cited.

**8. Fiduciaries § 2: Judgments §§ 1, 29—**

The fiduciary character of a debt does not depend upon its form but the manner of its origin and the acts by which it is incurred, and reducing such debt to judgment does not affect it, for the court will look behind the judgment to discover the original character of the liability.

APPEAL by defendants, movents, from *Thompson, J.,* at April Term, 1945, of JOHNSTON.  Affirmed.

Motion in the cause to stay executions issued on two certain judgments docketed in the office of the Clerk of the Superior Court of Johnston County.

On 28 November, 1928, movent James D. Parker, a practicing lawyer in the town of Smithfield, qualified as guardian of Henry A. Hodges, incompetent war veteran.

On 10 January, 1929, he received from a former guardian or his surety $5,179.91.  On the same day he loaned to himself the sum of $4,000.  In evidence of the "debt" thus created he executed a note payable to H. V. Rose, Trustee, and he also executed a trust deed to Rose conveying certain real property as security for the payment thereof.

Thereafter, through 31 May, 1932, he, as guardian, received from the Government monthly benefit payments totaling $4,250.  He commingled these funds with his own.

On 4 July, 1932, after a petition for his removal had been filed, he resigned and C. G. Grady was appointed guardian in his stead.

On 26 June, 1933, Grady, guardian, instituted an action against defendant Parker and his surety to recover the guardianship funds for which he had not accounted.  When the cause came on to be heard the jury found that Parker had commingled the guardianship funds with his own and, except as to some small amounts, had not accounted therefor, and fixed the amount due at $8,023.81, with interest from 1 January, 1932.  Judgment was entered on the verdict.  By reason of the then financial condition of Parker's surety the judgment was not satisfied but is still outstanding and unpaid.

On 6 February, 1935, Grady, guardian, instituted suit against Parker and his wife alleging the $4,000 loan by Parker to himself, the execution of the note and trust deed and the default thereon.  He prayed judgment for the amount due and a decree of foreclosure of the trust deed.  When the cause came on for hearing the jury answered the issues in favor of

plaintiff and judgment was entered on the verdict. The land was foreclosed. After the payment of taxes and expenses only $533.12 remained for credit on the judgment, which is still outstanding and unpaid.

The $4,000 represented by this judgment is a part of the total represented by the first judgment.

On 18 December, 1940, Parker filed a petition in the bankruptcy court alleging that he was "primarily *bona fide* personally engaged in" farming operations and seeking a composition with creditors as authorized by sec. 75 of the Bankruptcy Act, known as the Frazier-Lempke Act. Being unable to effect a composition, he amended his petition and prayed that he be adjudged a bankrupt, and he was on 18 July, 1941, adjudged bankrupt as provided by sec. 75 (s) of said Act. Thereafter his property was appraised. The appraisal disclosed that he owned farm land of the value of $3,890, livestock, $183, and farming implements, $47, together with other professional and personal property. On 20 March, 1944, he paid into court, by assumption of liens and a small sum in cash, the full amount of the appraised value of his property. Thereupon on 21 April, 1944, order was entered that title to the two farms reinvest in the bankrupt, subject to certain liens. The funds representing the appraised value were applied to liens superior to the liens of plaintiff. Thereafter, on 1 June, 1944, defendant was "discharged from all debts and claims which are provable by said Act against his estate, except such debts as are, by said Act, excepted from the operation of a discharge in bankruptcy."

Some time after the bankruptcy proceeding C. G. Grady resigned as guardian and the First-Citizens Bank & Trust Company was appointed in his stead.

On 29 January, 1945, the clerk, on application of the guardian, issued execution on each of the judgments rendered against Parker.

On 7 February, 1945, Parker appeared before the clerk and filed a verified petition alleging that said judgments were discharged by the order of discharge in bankruptcy and moved that said executions be stayed and recalled. Notice was issued and a hearing was had, after which the clerk denied the motion. The movent appealed. On appeal the judge below found the facts, affirmed the order of the clerk and directed that new executions be issued to be proceeded with as provided by law. Movent excepted and appealed.

*Lyon & Lyon for plaintiff, appellee.*
*J. Ira Lee for defendant, appellant.*

BARNHILL, J. The Bankruptcy Act, sec. 17, 11 U. S. C. A. 35, provides that a discharge in bankruptcy shall release the bankrupt from

all his provable debts except such as ". . . (fourth) were created by his fraud, embezzlement, misappropriation, or defalcation while acting as an officer or in any fiduciary capacity . . ." Do the judgments in question come within the quoted exception? This is the decisive question presented by this appeal.

It is the duty of a guardian to keep his ward's money and property separate from his own; to keep an account thereof; to make authorized investments, G. S., 34-13, not in his own name, but as guardian; to keep those investments separate from his own; and, when called upon to do so, to account for the same either in cash or in approved securities.

While he is held to a high degree of diligence and good faith, he is not ordinarily an insurer of funds which come into his hands. *Stroud v. Stroud,* 206 N. C., 668, 175 S. E., 131.

If he, in good faith and with due diligence, invests the funds of his ward in loans upon real estate in which he has no interest and loss occurs by reason of the subsequent depreciation in value of the security or other cause over which he has no control, he is protected from liability therefor. *Sheets v. Tobacco Co.,* 195 N. C., 149, 141 S. E., 355; *Robinson v. Ham,* 215 N. C., 24, 200 S. E., 903.

He may discharge himself at the termination of his trust by turning over and accounting for authorized investments taken in good faith as a result of prudent management of his ward's estate even though the securities are not then worth face value. *Cobb v. Fountain,* 187 N. C., 335, 121 S. E., 614.

Conversely, a guardian has no moral or legal right to mingle trust funds with his own and use them as such or to profit by the use of funds belonging to his ward. *Roebuck v. Surety Co.,* 200 N. C., 196, 156 S. E., 531; *Phipps v. Indemnity Co.,* 203 N. C., 420, 166 S. E., 327; *In re Allard,* 141 Pac., 661; *In re Boyer,* 174 N. E., 714; *Fincher v. Monteith,* 5 Lea (Tenn.), 144; *McIntire v. Bailey,* 110 N. W., 588.

If he commingles the guardianship funds with his own and uses them in his business or for his personal advantage he is guilty of a conversion under the statute. *Winstead v. Stanfield,* 68 N. C., 40; *Ury v. Brown,* 129 N. C., 270; *Duffie v. Williams,* 148 N. C., 530.

"Embarking the ward's funds in business ventures is even more flagrantly improper when they are used in the business of the guardian himself. Such a violation of the trust makes the guardian and his sureties immediately liable as for a conversion of the funds." 25 Am. Jur., 53. (See G. S., 33-24, enacted subsequent to the acts complained of.)

We must assume that Congress, in using the word "defalcation" in sec. 17 of the Bankruptcy Act, 11 U. S. C. A., 35, was not engaged in the redundant use of synonymous words but included the term for a purpose.

It was intended to cover defaults other than malversations implied by "fraud," "embezzlement," and "misappropriation," else it adds nothing to those terms.

"Defalcation" as used in a criminal statute implies some moral dereliction, but in this context it is a broader term and includes any failure of a guardian or other person acting in a fiduciary capacity to account for trust funds. It means the failure of a fiduciary to account for money received in his fiduciary capacity. *Bank & Trust Co. v. Herbst,* 93 F. (2d), 510, 114 A. L. R., 769; *Surety Co. v. Lanza,* 42 N. Y. S. (2d), 370; *Orndorff v. S. ex rel. McGill,* 108 S. W. (2d), 206; *In re Herbst,* 22 F. Supp., 353; *In re Messmore's Estate,* 290 Pa., 107; 26 C. J. S., 663.

It has been held to include the failure of: a treasurer, on demand, to account for overdraft of his account with his company, *Bannon v. Knauss,* 13 N. E. (2d), 733; a sheriff to account for public money, *Orndorff v. S. ex rel. McGill, supra;* a postmaster to account for Government funds, *Surety Co. v. Wittich,* 240 N. W., 888; an administrator to account to his successor, *Loan Co. v. Campbell,* 35 S. W. (2d), 75; an executor to account for money received, *In re Messmore's Estate, supra;* a receiver to return money received as compensation in accordance with a judgment modifying the original award, *In re Herbst, supra;* an attorney to account for money received for his client, *In re Gelson,* 12 Fed. Supp., 924; a receiver to account for trust funds used by him, *Bank & Trust Co. v. Herbst, supra;* a testamentary trustee to account for funds borrowed under agreement with his co-trustees, *Fine v. Saul,* 188 S. E., 439; *Brown v. Robey,* 27 S. W. (2d), 590; a trustee to pay a note given to cover loss caused by his use of funds, *Culp v. Robey,* 299 S. W., 846; and an administratrix to pay the loss resulting from improper investments, *Indemnity Co. v. Covington,* 14 N. Y. S. (2d), 683. In each instance it was held that the debt created by such defalcation was not discharged by bankruptcy.

On the very day movent received the money in the hands of his predecessor he appropriated $4,000 to his own use. That this transaction was cloaked in the form of a loan does not remove the implications of his act. As other funds were received he commingled them with his own and used them as such. Except for about $1,600 used for the support of his ward, he has failed to account for any of the trust estate.

Congress made provision to relieve an insolvent debtor of his obligations, but there is nothing in the Act to indicate an intention to discharge a debt which arose out of his mismanagement, misuse, or misappropriation of trust funds. The assets of the trust estate do not pass to the trustee in bankruptcy and debts created by a default in accounting there-

for are not within the purview of the bankruptcy statute. Otherwise the bankrupt would profit by his own wrong.

Clearly then, under the facts here disclosed, the failure of movent to account to his successor guardian constituted a defalcation while acting in a fiduciary capacity. The liability thus created is not dischargeable by a decree in bankruptcy.

As said by this Court in *Simpson v. Simpson*, 80 N. C., 332: "That the judgment recovered for the mismanagement and waste of the infant's (ward's) estate is a debt incurred or created by the defendant 'while acting in a fiduciary character' and consequently not affected by the discharge, is too plain to admit of debate." *Calvert v. Peebles,* 80 N. C., 334.

That the plaintiff's claims were reduced to judgment does not affect this conclusion. The judgment in each instance ascertains and fixes the amount of the defalcation, but it still remains a debt created by the defalcation of the movent while acting in a fiduciary capacity and, under sec. 17 of the Bankruptcy Act, is exempt from the operation of the discharge. *Simpson v. Simpson, supra; Boynton v. Ball,* 121 U. S., 457, 30 L. Ed., 985; *Rice v. Guider,* 265 N. W., 777; *Surety Co. v. Lanza, supra.* For other authorities see note 57, page 169, 11 U. S. C. A. 35. The fiduciary character of the debt does not depend upon its form but the manner of its origin and the acts by which it is incurred, *Simpson v. Simpson, supra,* and the Court will look behind the judgment to discover the original character of the liability. *Guernsey v. Napier,* 275 Pac., 724.

The judgments in question constitute liens upon the property of movents and plaintiff is entitled to execution for the enforcement thereof. *Sample v. Jackson, ante,* 380.

Since the judgment liens were not discharged by the decree of bankruptcy but are still in effect, it is unnecessary for us to discuss the contention that movent was not a *bona fide* farmer at the time he filed petition in the bankruptcy court or to decide the other questions debated in the briefs.

The judgment below is

Affirmed.